[Nos. 13133 and 13175.   In Bank. — April 1, 1890.]

GEORGE H. JACKSON AND C. F. THOMAS, APPELLANTS AND RESPONDENTS, *v.* M. H. TORRENCE AND ESTHER TORRENCE, RESPONDENTS, AND M. H. TORRENCE, APPELLANT.

APPEAL — REVIEW OF FINDINGS. — When a finding in favor of the plaintiff is inconsistent with the allegations of the complaint, and is self-contradictory as well as contrary to the evidence, it will be disregarded upon appeal.

DEED OF BARGAIN AND SALE TO MARRIED WOMAN — SEPARATE PROPERTY — REGISTRY — CONSTRUCTIVE NOTICE — PRESUMPTION — BURDEN OF PROOF. — All intending purchasers or encumbrancers are bound to take notice that property conveyed to a married woman by deed of bargain and sale is her separate property, in the proportion in which it had been paid for with her separate funds, and are bound to know at their peril what that proportion was; and also, that it would be her separate property, if

paid for by the husband with community funds, and by his direction and for the purpose of a gift conveyed to her. The presumption that such property belonged to the community, prior to the amendment of section 164 of the Civil Code in 1890, is a mere rule of evidence, fixing the burden of proof; and is not inconsistent with the rule that such recorded deed puts all purchasers or encumbrancers upon inquiry as to the extent of the claim of the wife to the property, whatever it may turn out to be.

ID. — GIFT OF HUSBAND TO WIFE — PURCHASE WITH COMMUNITY FUNDS.— If the husband is not indebted at the time, he has the right to give to the wife property purchased by him with community funds, and may make the gift effectual by simply directing the deed of bargain and sale to be made to her.

ID. — ESTOPPEL OF WIFE — SIGNATURE TO UNACKNOWLEDED CONTRACT OF SALE — MAXIM. — The wife is not estopped in favor of a purchaser under a contract of sale signed by herself and husband, which she fails to acknowledge, from claiming her separate interest in the property, by her mere failure to give express notice to the purchaser that she claims a definite interest in the property, or to inform him of the nature and extent of such interest; nor can any estoppel be founded against her in such case upon the mere legal maxim that she must be conclusively presumed to know the law that such unacknowledged contract was her husband's sole contract, since the question of her knowledge as to whether her husband asserted by the contract a right to dispose of the whole property, without her consent, is one, not of legal fiction, but of actual knowledge, motives, and intentions.

VENDOR AND PURCHASER — SPECIFIC PERFORMANCE — EXECUTORY CONTRACT OF SALE — ACKNOWLEDGMENT OF MARRIED WOMAN. — Specific performance cannot be compelled of an unacknowledged executory contract of a married woman to convey her separate property. Such contract, if not within the precise letter of section 1093 of the Civil Code, is within its meaning, and also within the policy, of the law requiring acknowledgments by married women.

ID. — TENANCY IN COMMON — JOINT CONTRACT OF HUSBAND AND WIFE — HOTEL PROPERTY. — Where husband and wife own separate undivided interests in a house and lot where they live and carry on a hotel business, and have jointly agreed to sell the whole property together for a fixed sum, the husband cannot be held to have *intended to* sell his undivided interest apart from that of the wife, and if she fails or refuses to acknowledge the contract or to convey her interest in the property, equity will not compel a conveyance by the husband of his separate undivided interest in the property.

CROSS-APPEALS from a judgment of the Superior Court of Yolo County, and appeal of M. H. Torrence from an order denying a new trial.

The facts are stated in the opinion of the court.

*F. E. Baker*, and *E. R. Bush*, for George H. Jackson and C. F. Thomas.

*George P. Harding*, and *A. L. Hart*, for M. H. Torrence.

Beatty, C. J.—The defendants are husband and wife, and the suit is to compel specific performance of the following agreement:—

"For and in consideration of the sum of five hundred dollars to us in hand paid by C. F. Thomas and George H. Jackson, the receipt whereof is hereby acknowledged, we, the undersigned, do hereby agree that on the first day of February, 1886, we will execute and deliver to said C. F. Thomas and George H. Jackson, or their assignees, a good and sufficient deed to all that real property in the town of Woodland, county of Yolo, and state of California, known as the Capital Hotel property, bounded on the north by Otto Schluer, east by Galbraith, south by Main Street, and west by First Street, together with all and singular the furniture, fixtures, buses, harness, and all the personal property belonging to said hotel, whether enumerated or not, except one piano, sewing-machine, feather bed, two chairs, and on that day to give to said C. F. Thomas and George H. Jackson possession of the same. The said property to be clear of all taxes, assessments, commissions, liens, or encumbrances whatsoever, provided always, and this agreement is upon the express condition, that the said C. F. Thomas and George H. Jackson, or their assigns, shall on that day pay to us the further sum of nineteen thousand five hundred dollars ($19,500), and if the said C. F. Thomas and George H. Jackson, or their assigns, shall fail or neglect to pay the said sum on that day, then and in that case we agree to return to them the said sum of five hundred dollars, without interest, on said day, and after the said sum is so returned, this agreement to be void.

"Dated Woodland, January 8, 1886.

"M. H. Torrence.
"Esther Torrence."

The superior court found that the wife and the community owned separate interests in the premises, and made a decree compelling a conveyance by the husband of the community interest, upon payment of its estimated proportion of the agreed price, but refused a decree as to the interest of the wife, upon the ground that she, not having acknowledged her execution of the contract to sell, was not bound by it.

The husband, in case No. 13133, appeals from the decree compelling him to convey, and from an order denying his motion for a new trial. The plaintiffs, in case No. 13175, appeal from so much of the decree as adjudges the wife to be the owner of a separate interest in the premises, and denies them any relief as against her.

Both appeals have been submitted, and will be considered together.

The facts upon which the controversy depends are as follows:—

The Capital Hotel, referred to in the contract, is a three-story building situated on lot 1, in block 2, of the town of Woodland. This lot is a rectangle, and fronts (south) sixty feet on Main Street, and (west) one hundred and fifty feet on First Street. It is bounded on the north by the lot of Schluer, and on the east by the lot of Galbraith. But although it is a single lot, and covered by one building, it was not all acquired by the defendants at the same time, and is subdivided in a very unusual manner.

In December, 1880, and subsequent to the marriage of the defendants, John Smith, by grant, bargain, and sale deed, conveyed all said lot to Esther Torrence, *saving and excepting* the first story of the building standing on the east twenty feet of the south sixty feet of said lot, known as Dickinson's saloon.

Subsequently, on September 5, 1881, David Burns, by grant, bargain, and sale deed, conveyed to M. H.

Torrence and his wife, Esther Torrence, the east twenty feet of the south sixty feet of said lot. Neither of these deeds contained any expression as to how the granted premises should be held by the grantees, but the first recited a consideration of ten thousand dollars, paid by Esther Torrence, and the second a consideration of three thousand five hundred dollars, paid by M. H. and Esther Torrence. Both deeds were recorded in Yolo County long before the date of the contract with the plaintiffs, above set out.

There was some conflict in the evidence as to whose money paid for the property, but the court found that of the ten thousand dollars paid for the parcel first described, three thousand two hundred dollars (eight twenty-fifths) was of the separate property of the wife, and the balance was of the community funds. As to the second parcel, —the saloon,—it was found that the entire purchase price was paid out of the community funds.

As a conclusion from these findings, it was held that the wife owned, as her separate estate, eight twenty-fifths of the hotel property, including the two upper stories over the saloon, with the furniture, buses, etc., and that the balance belonged to the community. It was found that the saloon property was worth four thousand dollars, and the hotel property sixteen thousand dollars.

The husband, in support of his appeal from the order denying his motion for a new trial, assails these, among other findings of the superior court, but as they are attacked upon the ground that they are injurious to his wife in awarding her a smaller separate interest in the property than she was rightfully entitled to, and as she has not appealed, it is doubtful if he could be heard to make the objection. At all events, it will be assumed for the present that the wife and the community owned the property in the respective proportions as found by the superior court.

Such being the case, on the sixth day of January,

1886, they entered into the following written agreement with one W. M. Coward:—

<blockquote>

"Woodland, January 6, 1886.

"W. M. Coward is hereby employed exclusively to sell our hotel, complete, with furniture and bus and harness, situated on the northeast corner of Main and First streets, Woodland, California, on or before three months from date.  Price, $20,000.  Cash, ——.  Secured by mortgage on the property, $——.  Interest on deferred payments, — per cent per annum.  Term of credit, ——.  Agent's commission, 2½ per cent.  I hereby agree to advertise the above property, and use all diligence in effecting a sale of the same.    "M. H. Torrence.

"Esther Torrence."

"W. M. Coward.

"Indorsed: Property reserved, piano, two chairs, plush covered, one sewing-machine, one feather bed."

</blockquote>

On the following day Coward notified them that he had made a sale of the property for twenty thousand dollars to the plaintiffs, and that he had received five hundred dollars on account of the purchase.  The parties were brought together and discussed some details as to time of giving possession, division of accruing rents, etc., whereupon plaintiffs drew up, or procured to be prepared, the contract above set out, which was left with the defendants for their examination.  On the following morning—the day it bears the date—they delivered the contract to the plaintiffs, signed but not acknowledged.

Mrs. Torrence was never asked by either of the plaintiffs to acknowledge her execution of the contract, and it would seem that none of the parties at that time supposed an acknowledgment was necessary in order to make it binding upon her.

The five hundred dollars mentioned in the agreement was not paid to the defendants, but was retained by Coward, pending the consummation of the transfer.

Within a few days after their execution of the contract the defendants manifested a disposition to repudiate it.

The plaintiffs and Coward were claiming that it embraced the saloon as well as the hotel property, but the defendants claimed that they had understood and intended that the saloon should be reserved. The superior court finds that this was a mere pretense on their part, put forward as an excuse for evading performance of their contract, and we accept this conclusion, although, when the situation of the property and the mode of its acquisition are considered, with reference to the terms of the written authority to Coward, and the written contract with plaintiffs, the claim of defendants does not appear to be wholly unreasonable.

On the 1st of February, 1886,— at the time stipulated, — the plaintiffs made a tender to defendants of the balance of the agreed price of the property,— nineteen thousand five hundred dollars,— and demanded of them a deed conveying the entire premises, which demand the defendants and each of them refused. The findings are not perfectly explicit as to this demand and refusal, but we do not understand that there was any offer by plaintiffs to pay, except upon the express condition that both defendants should unite in a conveyance sufficient to transfer all the interest of each of them in the entire property, viz., the whole of said lot 1, with the whole of the buildings and the personal property used in connection with the hotel.

Their tender and demand having been refused, plaintiffs commenced this action.

In their complaint they alleged *inter alia* that M. H. Torrence was, on and prior to January 8, 1886, the owner of the whole of said lot 1; they set out the contract of that date in terms; alleged that the premises therein described were the same as said lot 1, and that Esther Torrence, although not the owner of any interest therein, was asserting some claim of interest. They prayed for

a decree compelling both defendants to convey, and quieting their title as against Esther Torrence.

The defendants answered, denying that M. H. Torrence was the exclusive owner of the property, and alleging that Esther Torrence was sole owner of the hotel property, and joint owner with M. H. Torrence of the saloon property. They also alleged that they did not know the contract embraced the saloon property, or they would not have signed it, and that Esther Torrence, discovering that mistake, and divers misrepresentations in regard to the sale, had, without the advice or procurement of her husband, refused to acknowledge her execution of the contract or to perform it. Other matters of defense were alleged, which it is not necessary to mention.

·Upon most of the matters put in issue by the pleadings, the findings of the superior court were in favor of the plaintiffs, and the defendant Torrence attacks many of the findings as being wholly unsupported by the evidence. We shall have occasion to notice one or two of these specifications in discussing the legal questions presented by the case, but in this general statement shall mention only one point upon which we think the court failed to find correctly.

Finding 14 is as follows:—

"That the said deed from said Smith to Esther Torrence was a deed of grant, bargain, and sale, and purported to convey the premises described therein to said Esther Torrence in consideration of the sum of ten thousand dollars, without any specification therein that she should take, or have, or hold the same as or for her separate property or estate, or as a gift from her said husband or from said Smith; that said deed was duly recorded in the office of the county recorder of Yolo County, on the seventeenth day of December, 1880, and plaintiffs had notice of the record of said deed, but neither of the plaintiffs had any notice, either actual or

constructive, of a claim on the part of defendant Esther Torrence, of any separate interest in or to any of the property in controversy, until after the commencement of this suit."

This finding—in addition to being in conflict with the allegation contained in the complaint, that Esther Torrence was asserting a claim to an interest in the property — is self-contradictory. It is simply impossible that the plaintiffs could have been without constructive notice of her claim with the deeds of record purporting to convey it to her. All intending purchasers or encumbrancers were bound to take notice that the property was hers in the proportion that it had been paid for with her funds, and what that proportion was they were bound to know at their peril.

It is true that with respect to conveyances to married women expressing a valuable consideration, and made prior to the recent amendment to section 164 of the Civil Code (Stats. 1889, p. 328), the presumption is, that the property conveyed belongs to the community, and is subject to the control and disposition of the husband alone. But this is a mere rule of evidence fixing the *onus probandi* in cases where the question of ownership is in litigation, and is entirely consistent with the doctrine that every purchaser has notice, her deed being of record, of the extent of her claim to the property, whatever it may turn out to be; and that if she has paid for it out of her separate estate, either in whole or in part, she may always claim it and hold it, in the same proportion, upon making proof of the fact. (*Ramsdell* v. *Fuller*, 28 Cal. 44, 45; 87 Am. Dec. 103.)

And so, also, it will be her separate property if paid for by her husband with community funds, and by his direction, and for the purpose of a gift conveyed to her. (*Peck* v. *Brummagim*, 31 Cal. 441; 89 Am. Dec. 195. And see *Kraemer* v. *Kraemer*, 52 Cal. 302; *Moore* v. *Jones*, 63

Cal. 12; *Schuyler* v. *Broughton,* 70 Cal. 282; *McComb* v.
*Spangler,* 71 Cal. 418; *Loring* v. *Stuart,* 79 Cal. 200.)

In view of these authorities, it certainly cannot be
denied that plaintiffs were put upon inquiry as to the
claims of Mrs. Torrence, and there is not a *scintilla* of
evidence, nor any pretense, that plaintiffs ever made any
inquiry whatever, or that the defendants, or either of
them, ever volunteered any information by which they
were misled.

But, besides this constructive notice, the testimony
shows very conclusively that both of the plaintiffs knew
at and before the execution of the contract that Mrs.
Torrence *claimed* an interest in the property. They do
not even deny that they knew she made some claim.
Jackson, it is true, says that during the negotiations
about the property, neither of the defendants informed
him what interest Mrs. Torrence had in the property,
and that nothing was said about any separate interest,
and Thomas testifies that he *had no knowledge* of any
separate interest of Mrs. Torrence. But this means
nothing more than that they made no inquiry, received
no information, and therefore did not *know* what her
interest was. It does not mean that they were ignorant
that she made some claim. And it is very evident they
could not consistently have taken such a position. Ac-
cording to the most obvious construction of the findings,
they had not only constructive notice of the form of the
conveyances, they had actual knowledge of the contents
of the record. But whether this is the meaning of the
finding or not, and whether or not the plaintiffs had seen
the written authorization given to Coward to negotiate
the sale, which, as we have seen, was signed by both
husband and wife, the plaintiffs show by their own testi-
mony that she took a leading and active part in the
negotiations preceding the drawing of the contract; that
they caused the contract to be drawn up in terms which
would make it her contract as well as her husband's;

that they left it with her to be executed. Why should they have done these things if they were ignorant that she made any claim to a separate interest in the property? Evidently they were not ignorant. They had both actual and constructive notice, and so much of the fourteenth finding as declares the contrary must be rejected in considering the appeal.

With this general statement of the facts of the case, we will proceed to consider such of the assignments of error as require discussion.

By the decree the defendant M. H. Torrence is compelled to convey to the plaintiffs all of the community interest in the property as found by the court, upon payment of the agreed price of twenty thousand dollars, less eight twenty-fifths of the estimated value of the hotel property, less, also, the five hundred dollars paid at the date of the contract, and less the community interest in the estimated value of the rents and profits of the whole property from the first day of February, 1886, the date when by the terms of the contract the plaintiffs were to have possession. It is further decreed that the plaintiffs be let into possession of the property, to hold the saloon exclusively, and the hotel and personal property in common with Esther Torrence, — seventeen twenty-fifths to them, and eight twenty-fifths to her.

The first point made by plaintiffs in support of their appeal is, that the superior court erred in not finding that the whole of the property belonged to the community. We think the findings of the court on this point are not only fully sustained by the evidence, but that it would have sustained findings much more favorable to the wife. She is found to be the owner of only eight twenty-fifths of the hotel property. But the evidence shows that the price of this parcel was ten thousand dollars; paid four thousand in cash, balance on time. Of the cash payment she contributed out of her separate

funds three thousand two hundred dollars, and her hus-
band only eight hundred dollars. In other words, she
paid in cash eight twenty-fifths of the whole price, and
four-fifths of the cash payment. The balance was paid
out of what they jointly owned in keeping the hotel.
Certainly she owned no less proportion of the property
than her cash payment bore to the whole price. Indeed,
she was entitled to more; she was entitled to interest on
her cash payment, and to have the amount of such in-
terest computed as a part of her contribution to the pur-
chase. And the court might have found upon the
testimony of the husband that he intended to, and did,
make his wife a gift of the whole hotel property. His
testimony is to the effect that he so intended, and that
the deed was made to her by his direction. There is no
evidence that he was indebted to any one at the time,
and if he was free from debt he had the right to give
her the property, and could make the gift effectual by
simply directing the conveyance to be made to her.
(*Peck* v. *Brummagim*, 31 Cal. 441; 89 Am. Dec. 195; *Dow*
v. *Gould and Curry Co.*, 31 Cal. 653; *Ingersoll* v. *Truebody*,
40 Cal. 603; *Woods* v. *Whitney*, 42 Cal. 359; *Higgins* v.
*Higgins*, 46 Cal. 263.)

This evidence of the defendants, to the effect that it
was intended between themselves that the wife should be
sole owner of the hotel property, is the only direct evi-
dence of their intentions, and is diametrically opposed
to the contention of plaintiffs that Esther Torrence in-
tended to contribute her three thousand two hundred.
dollars to the common stock, and that on the purchase
of the hotel everything became, and continued thence-
forth to be, community property. There is nothing in
the case to sustain this theory.

But it is contended by plaintiffs that Esther Torrence
is *estopped* from making any claim to the property be-
cause she did not, during the negotiations for the sale of
it, distinctly inform them of the nature and extent of her

interest. The argument is, that a grant to a wife expressing a valuable consideration creates a presumption that the granted premises are community property; that an intending purchaser has a right to rely on this presumption, and in the absence of express notice from the wife that she claims some definite interest, he is at liberty to infer, and act upon the inference, that she has no interest; that this is especially so when she is informed that her husband is negotiating a sale or other disposition of the property; and that if under such circumstances she keeps silence, she must not afterward be allowed to assert her claims, however well founded.

We think that even in the strongest case that can be supposed this is a dangerous and unnecessary doctrine. The intending purchaser of land which has been conveyed to a married woman is under no compulsion to take it and pay for it without getting her deed, properly acknowleged. He knows her husband has no title to it except through the deed purporting to convey it to her, and that he can get no clear and perfect title himself without a deed from her. If she is willing, deliberately and with full knowledge of her rights and of the effects and consequences of her acts, to disclaim all interest in the property, she will be willing to sign and acknowledge a deed. If she is not willing to sign and acknowledge a deed, no other sort of admission should be held to bind her. The clearly expressed purpose and policy of the laws is to permit no alienation of a married woman's real property except by deed acknowledged by her on examination, separate and apart from her husband, and after its contents have been fully explained to her by the officer whose sworn duty it is to see that she not only understands what she is doing, but does it without any constraint due to the presence of her husband. In place of all these safeguards for her independence and freedom of volition, the doctrine contended for would substitute the testimony of witnesses that when her hus-

band had asserted a right to dispose of her property she had failed to contradict him. How dangerous a breach upon the policy of the law designed for the protection of married women from marital influence would be made by the establishment of such a doctrine, is too obvious to require comment.

And, in addition to its danger, how utterly inexpedient it would be! Its only effect would be to encourage honest purchasers to rely upon uncertain and doubtful admissions, in place of the certain, authentic, and secure admission of an acknowledged deed, and to encourage dishonest husbands to enter into fraudulent combinations with simulated purchasers in order to defraud their wives. In other words, the establishment of the doctrine contended for would merely tend to the multiplication of unnecessary litigation, in which fraud and perjury would often carry the day. We had better hold strictly to a law with which compliance in all cases is not only possible but easy, and which, being observed, leaves no room for litigation in which the most easily manufactured testimony may overwhelm the right. If a purchaser cannot get a married woman's acknowledged deed for property, the title of which stands in her name, let him keep his money, and wash his hands of the business.

But, aside from this view of the legal branch of this proposition of the plaintiffs, it is to be observed that in this case it rests upon no basis of fact.

There is not a particle of evidence that M. H. Torrence ever did, in fact, represent himself to be the sole owner, or to have the sole right of disposition of this property to plaintiffs or to any other person; and there was, consequently, never an occasion when his wife was called upon to contradict such an assertion. The authorization to Coward to make the sale was signed by both husband and wife. The oral negotiations that ensued with the plaintiffs were conducted by both husband and wife; the written contract prepared by plaintiffs in terms implied

her concurrence.  It was left by plaintiffs to be executed by her, and it was signed by her.  There is no suggestion from beginning to end that M. H. Torrence claimed, or that plaintiffs understood him to claim, a right to dispose of the property without his wife's concurrence.  On the contrary, the evidence leaves no room to doubt that plaintiffs all along understood that Mrs. Torrence was claiming an interest in the property, and a voice in its disposition.  For that reason they sought to bind her by a written contract to convey, and no doubt they then thought, as their counsel still contend, that she was bound by the contract, though she had not acknowledged it.  Considering themselves secure of getting her deed, they did not care to inquire what her interest was, and they never did inquire.  They did not intend to pay for the property without a deed from her and her husband, which they knew would operate a transfer of the whole of it, whatever the respective interests of the grantors might be.  What they relied on was not an admission by her that her husband had power to convey, but the promise of her conveyance, and they simply made the mistake of not getting her promise executed in a form to bind her.

We conclude that there was no estoppel against Esther Torrence to assert her rights, not only because the law would not raise an estoppel on the facts assumed, but because the facts assumed had no existence.

We ought not, perhaps, to leave this branch of the case without noticing the argument of counsel, repeated so often and with such variation of statement, by which they seek to found an estoppel on a legal fiction.

Every one — they say — is conclusively presumed to know the law; and if it be the law (which they deny) that a married woman's executory contract to convey land does not bind her unless it is acknowledged, why then we must impute to Esther Torrence knowledge that the contract signed by her husband was his sole

contract, and therefore she knew that it was not what its terms imported, but was an assertion by him of a right to dispose of the whole of the property without her consent, — an assertion which she indorsed, or at least failed to deny when she ought to have denied it.

We think this is putting the legal maxim relied on to a use never intended, and to which it is wholly inadequate. All that it means is, that no one can screen himself from the legal consequences of his acts or omissions by pleading ignorance of the law, and it has no sort of application to a case of this kind, where the question relates to actual knowledge, motives, and intentions.

The last proposition made by plaintiffs on their appeal is, that the contract bound Mrs. Torrence to convey, notwithstanding it was not acknowledged; and in support of this proposition they make a long and very ingenious argument. They cite the provisions of the code which confer upon married women the power to make contracts of all kinds, and call attention to the fact that there is no provision making an acknowledgment essential to the validity of an executory contract of a married woman to convey.

But we think they give to the statute too narrow and literal a construction.

The following sections of the Civil Code are referred to:—

"Sec. 1093. No estate in the real property of a married woman passes by any grant purporting to be executed or acknowledged by her, unless the grant or instrument is acknowledged by her in the manner prescribed by sections 1186 and 1191."

"Sec. 1186. The acknowledgment of a married woman to an instrument purporting to be executed by her must not be taken, unless she is made acquainted by the officer with the contents of the instrument on an examination without the hearing of her husband; nor certified,

unless she thereupon acknowledges to the officer that she executed the instrument, and that she does not wish to retract such execution."

An executory contract to convey, if not within the precise letter of section 1093 — as being a technical grant — is within its meaning, and also within the policy of the law. Such a contract, if enforceable, has the effect of vesting the equitable estate in the vendee, leaving in the vendor the dry legal title. It is in effect a grant of the whole beneficial interest in the land, and unless we are to hold that the law deals with the shadow and not the substance of things, we must conclude that such instruments are embraced by the section referred to.

Besides, the specific enforcement of contracts is allowed as a matter of grace and not of right, and a court of equity will never lend its aid to accomplish by indirect means what the law or its clearly defined policy forbids to be done directly.

Of the California decisions cited by plaintiffs on this point, we think *Bodley* v. *Ferguson,* 30 Cal. 516, and *Racouillat* v. *Sansevain,* 32 Cal. 377, are not in point, and *Love* v. *Watkins,* 40 Cal. 562, 6 Am. Rep. 624, is opposed to their contention.

We hold that specific performance of the unacknowledged executory contract of a married woman to convey her real property cannot be compelled, and that there is no error in the decree of the superior court prejudicial to the plaintiffs.

We come next to consider the appeal of the defendant M. H. Torrence.

He contends that the superior court erred in compelling him to convey his interest in the property on receipt of its proportion of the agreed price. He says that in so decreeing the court compelled him to perform a contract which he never made or intended to make, and in this position we think he is sustained by the facts above stated.

The case is peculiar. A husband and wife own separate undivided interests in a house and lot, where they live and carry on a business. They agree together that they will sell the whole property for a fixed sum. Necessarily they intend, among other things, to take up their abode in some other place, and transfer their business, if they continue in business, to some other establishment. They do not intend to separate themselves, one to go and the other to stay. Neither intends to sell out his interest and leave the other a tenant in common with strangers, especially when the property, as here, consists of both realty and personalty, together with the good-will of a hotel and saloon business. That the sale shall be complete as to both must in all such cases be a highly material consideration, and certainly it cannot be inferred from the fact that the husband is willing to unite with the wife in making a complete disposition of their common property and business, that he is also willing to dispose of his share of the property and business for a share of the price, leaving his wife a co-tenant with the purchasers.

· The effect of this decree, however, in just such a case, is to compel the husband to do what he never agreed to do, and what it cannot be supposed he would ever have been willing to consent to do. The only contract he executed, or intended to execute, was a contract in which his wife was to join, for the conveyance of the whole property for a round sum. Until this contract was completed by the accession of his wife, there was no contract of which there could be any breach or failure to perform.

As we have seen, the wife never did execute, and it never became binding upon the husband, because it never bound her. (*Barber* v. *Burrows*, 51 Cal. 404.)

His delivery of the contract to the purchasers, if he did deliver it, can make no difference in this conclusion. He probably did not know that it was defectively executed on the part of his wife, but if he did know that her

acknowledgment was necessary, he also knew that it was the business of the purchasers to procure her acknowledgment to be taken without his presence and hearing, and he had a right to rely upon their doing what was necessary to be done for their own protection. It was not his fault that she was not bound, and as his agreement was dependent on her concurrence, he cannot be compelled to convey without first making a contract for him and then enforcing compliance.

As against the appeal of the plaintiffs, the judgment of the superior court is affirmed. But on the appeal of M. H. Torrence, the judgment and order appealed from are reversed and the cause remanded.

SHARPSTEIN, J., McFARLAND, J., PATERSON, J., THORNTON, J., and FOX, J., concurred.

Rehearing denied.