## WRIGHT v. WRIGHT.

### No. 19,511; August 28, 1895.

41 Pac. 695.

**Separate Property—Gift from Husband to Wife.**—Where property purchased with community funds is conveyed to the wife by direction of the husband, and with the intent that it shall become separate property, that conveyance will operate as a gift from him to her.

**Separate Property.**—Where a Complaint Alleges the Making of Deeds to certain property in the wife's name, and that the property was paid for with community funds, and is community property, and the answer admits the making of the deeds, but alleges that the property was paid for with the wife's separate funds, and is her separate and individual property, there is no reversible error in a finding that the deeds were so executed by the instruction of the husband, for the purpose of vesting title in the wife, as her separate and individual property, and not as belonging to the community.

**Community Property.**—In an Action by a Husband to have Set Aside Conveyances of certain realty to his wife, and to have the property declared community property, the complaint also alleging desertion of him by the defendant, judgment will not be reversed for want of a finding on that particular issue, the court having found that the property was the wife's separate estate.

APPEAL from Superior Court, San Bernardino County; J. S. Noyes, Judge.

Action by M. V. B. Wright against Margaret D. Wright, his wife, to have set aside a certain conveyance of gift from him to her, and to have the property covered thereby declared community property. There was judgment for defendant, from which plaintiff appeals. Affirmed.

Carver & Preston and D. P. Hatch for appellant; Oscar P. Taylor (John D. Bicknell of counsel) for respondent.

BELCHER, C.—Plaintiff and defendant intermarried in the state of Ohio in 1859, and have ever since been, and now are, husband and wife. In 1873 they came to this state to live, and settled at Riverside. In November, 1878, Hattie L. Traver conveyed to defendant, by a quitclaim deed, twenty

acres of land, situate in what is now the county of Riverside; and in May, 1883, she again conveyed to defendant the same land, by a bargain and sale deed. On the twenty-first day of May, 1885, plaintiff executed to defendant a deed of the same land, which, after referring to the last-named deed, recites that: "Whereas, the conveyance thereof appears on the face of said deed to be community property; and whereas, the consideration paid therefor was from the separate estate of said Margaret Wright; and whereas, I am desirous of placing the title to said property in my wife, Margaret Wright, as her separate property: Now, therefore, in consideration of the premises, I hereby give and grant to Margaret Wright," etc. Subsequently, in 1888, defendant purchased two lots of land in the town of Riverside, and thirty shares of the capital stock of the Riverside Canal Company, taking the title thereto in her own name. Plaintiff and defendant lived and cohabited together in Riverside until January, 1886, when plaintiff left defendant and went to Los Angeles, where he has ever since resided separate and apart from defendant. In May, 1893, plaintiff commenced this action, alleging that all the before-mentioned property was purchased and paid for with community funds, and is the community property of himself and wife; that the deed of May 21, 1885, was obtained by fraudulent misrepresentations on the part of defendant, and that plaintiff did not know the contents of the deed when he signed it, and never discovered the contents or nature and import thereof until January, 1892; that plaintiff never intended to give or grant any part of said land to his wife, but that since obtaining the deed she has deserted him, and has refused, and still refuses, to live with him as his wife, and has during all said time claimed to own all the said property as her own separate estate—and praying that by the judgment and decree of the court the said deed of May 21, 1885, be declared null and void, and be set aside and canceled, and all the property described, both real and personal, be adjudged to be the community property of plaintiff and defendant, and be equitably divided between them. The defendant answered, setting up the purchase by herself of all the property involved in the action, and the payment therefor with money derived from her own separate earnings, and alleged to be her separate funds and estate; denying that plaintiff executed the deed of May 21, 1885, without knowing the contents and import

thereof, and under fraudulent misrepresentations, and alleging that he "voluntarily, of his own free will and accord, executed the aforesaid writing, with the intention and for the purpose of thereby releasing, giving, granting, and conveying to defendant, as and for her separate and individual property and estate, any and all right, claim, and interest which said plaintiff then had, or might thereafter acquire either in law or equity, of, in, and to the aforesaid land, and every part thereof, and that plaintiff, at the time of executing said writing, knew well the full contents and import thereof"; denying that defendant has, for a long time past, or during any time, or at all, deserted the plaintiff, or refused to live with him as his wife, and alleging, on the contrary, that plaintiff has, for more than ten years last past, willfully deserted and abandoned defendant, and has lived separate and apart from her, and during all said time has willfully failed, neglected, and refused to provide for her the common necessaries of life.

The court below found that Hattie L. Traver executed to defendant the two deeds, as before stated, and that the entire consideration for the conveyances, and the entire purchase price of said land, was paid by defendant from and out of her own separate property and estate, and that no part of said consideration was community property. The court further found, among other things, as follows: (5) "That the plaintiff directed said Hattie L. Traver to so execute said deeds to the defendant in the name of the defendant, and directed said Hattie L. Traver to so convey said lands to the defendant, with the intention and for the purpose of thereby vesting the title to all said property in the defendant, as and for her separate and individual property and estate, and not as community property." (6) "That said deeds were so executed and said land was so conveyed to the defendant, and in the name of the defendant, with the full knowledge of the plaintiff, and that the plaintiff consented to, acquiesced in, and approved of the manner and form of such execution and conveyance, with the intention and for the purpose of thereby conveying to the defendant as a gift, and vesting in her as a gift, from himself, any and all right and interest which the plaintiff claimed to have in said property." (7) "That on May 21, 1885, the plaintiff executed and delivered to the defendant a deed of gift, conveying to the defendant all the right and interest which the plaintiff claimed in the above-described property;

that the plaintiff, at the time of executing said deed of gift, well knew and understood the full contents, import, and meaning thereof; and that he executed the same voluntarily, and of his own free will and accord, and without any accident or mistake on his part, and without any fraud, deception, or undue influence on the part of the defendant, and with the intention of thereby giving and granting to the defendant, as and for her separate and individual property and estate, any and all right and interest which said plaintiff then claimed to have in said property." (10) "That all the property, real and personal, mentioned and described in the pleadings herein, and in these findings, is the sole and separate property and estate of the defendant, and that no part thereof is, or ever was, community property, and that the plaintiff has not now, and never did have, any interest therein." In accordance with the findings, judgment was entered that the plaintiff take nothing by his action, from which judgment he has appealed, and has brought the case here on the judgment-roll, including a bill of exception.

Counsel for appellant earnestly contend that the earnings of defendant, with which the Riverside land was paid for, are clearly shown by the affirmative averments of the answer to have been community funds, and, therefore, that the said land became and was community property. This question has been very elaborately argued by counsel, but we do not deem it necessary to state or review the points made; for, conceding the argument to be sound, still, if the findings above quoted can be sustained, it is a matter of no consequence whether the original purchase money was separate or community property, as the judgment, in either event, must be affirmed. Under our statute, all property acquired by husband or wife after marriage, except that acquired by gift, bequest, devise or descent, is community property. And prior to the amendment to section 164 of the Civil Code, in 1889, all property conveyed to the wife was presumed to be community property. This presumption, however, could be met and overcome by extrinsic evidence showing that the property was acquired by her in one of the excepted ways above specified in the statute. And where property purchased with community funds was conveyed to the wife by direction of the husband, and with the intent that it should become her separate property, it has many times been held that the conveyance operated as a gift

from him to her: Peck v. Brummagim, 31 Cal. 441, 89 Am. Dec. 195; Woods v. Whitney, 42 Cal. 358; Higgins v. Higgins, 46 Cal. 259; Read v. Rahm, 65 Cal. 343, 4 Pac. 111; Jackson v. Torrence, 83 Cal. 521, 23 Pac. 695. In the case last cited it is said: "There is no evidence that he [the husband] was indebted to anyone at the time, and if he was free from debt he had the right to give her [his wife] the property, and could make the gift effectual by simply directing the conveyance to be made to her." So, also, it has been held that when a husband himself conveys property to his wife, whether it be his separate property or community property, the conveyance operates to vest the title in the wife, as her separate estate: Burkett v. Burkett, 78 Cal. 310, 12 Am. St. Rep. 58, 3 L. R. A. 781, 20 Pac. 715; Taylor v. Opperman, 79 Cal. 468, 21 Pac. 869; Oaks v. Oaks, 94 Cal. 66, 29 Pac. 330; In re Lamb's Estate, 95 Cal. 397, 30 Pac. 568.

But, admitting that such is the law, still it is insisted that finding 5 is outside of the issues raised by the pleadings, and that each of the findings quoted is contrary to, and not supported by, the evidence. The complaint alleges the making of the deeds by Mrs. Traver to defendant, and that the property was paid for with community funds, and is now the community property of plaintiff and defendant. The answer admits the making of the deeds, and alleges that the property was paid for with defendant's separate funds, and is now her separate and individual property. The real issue, then, was as to whether the property purchased became community or separate property; and, to determine that issue, much evidence was introduced, without objection, on both sides. Of course, the general rule is that new matter must be specially pleaded, but that rule seems hardly broad enough to apply to this case, and put the finding complained of outside of the issues raised. But, however this may be, if that and the other findings are justified by the evidence, the judgment cannot be reversed on this ground.

The evidence was in many respects conflicting, but that was a matter for solution by the trial court. The plaintiff testified, "It is my recollection that I directed Mrs. Traver to make the deed to my wife." Defendant testified: "At the time of the Traver conveyance, plaintiff said it was my money paid for the land, and if he had the deed in his own name he could not take up a government claim; it was my money paid for it,

and I ought to have it. He so stated both before and after the deeds were made. After that, Mr. Wright always spoke of the property as being 'Mamma's property,' 'Mamma's ranch,' and said it was my money paid for it." C. W. Craven testified: "I live in Riverside. Have known plaintiff and defendant since 1880. Am their neighbor. Early in my acquaintance, I heard plaintiff, on several occasions, state, in substance, that no one should look to him for anything about the ranch; that he had no right—no part—in the property; that it was Mrs. Wright's property; and that he was to be held for no obligations. . . . . Since 1885 I have heard him say the property was his wife's, and he was to be held for nothing financially." Plaintiff testified that, when Mr. Conway brought him the deed of May 21st for its execution, Conway "said that Mrs. Wright could get a loan of $1,600 from Mr. McFarland, but that Mr. McFarland refused to loan the money unless I would sign away my community rights." S. J. Hinckley testified that in June, 1885, plaintiff told him "that Mr. Conway came to Colton, where he was teaching school, and had a paper, and got him to sign it; that he knew he was signing his rights away, but he didn't care." O. T. Dyer testified, in substance, that early in May, 1885, he was negotiating a loan for Mrs. Wright upon the property in question, and had a conversation with plaintiff about his joining in the execution of the mortgage; that plaintiff said he had no interest in the property, and would not join in the mortgage, or put his name on the note, but that he would deed the land to his wife, and she might do what she had a mind to with it; all he asked was to be let alone. John E. Wright, the son of plaintiff and defendant, testified that between 1887 and 1889 he had a conversation with his father about home matters. "I said to him, 'How did you come to sign that paper that mother said you signed, giving your property right away?' He said, 'Well, she owned the property, and she was not in very good health, and it seemed to worry her that she did not have the entire control, and I just signed it to please her.' . . . . He further stated that his wife owned the property any way, and that he didn't see as his signing the paper made any difference." Without discussing the matter further, it seems to us that the evidence above recited is quite sufficient to support and justify the findings as to each of the deeds under which defendant claims title.

It is further urged that the judgment should be reversed because the court failed to find upon the issue of desertion, and upon the allegations found in paragraphs 10 to 17 of the answer. We do not think the judgment can be disturbed on this ground. The court having found that plaintiff directed Mrs. Traver to convey the property to defendant, with the intention and for the purpose of thereby vesting the title thereto in the defendant, as her separate estate, and having further found that the deed of May 21, 1885, was a valid and operative deed of gift, it is wholly immaterial whether the property was paid for with separate or community funds, and equally immaterial whether the plaintiff or defendant had been guilty of desertion. "There should be findings on all the material issues in the case, but a judgment will not be reversed for want of a finding on a particular issue, where it is apparent that the failure to find on that issue is in no way prejudicial to the appellant": Murphy v. Bennett, 68 Cal. 528, 9 Pac. 738. The judgment should be affirmed.

We concur: Haynes, C.; Britt, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is affirmed.