[Civ. No. 9630.   First Appellate District, Division One.—June 21, 1935.]

CENTRAL CONSTRUCTION COMPANY (a Corporation), Appellant, v. E. A. HARTMAN, Respondent.

Sterling Carr for Appellant.

Shelton, Gray & McWilliams, Miller & Ellis and W. A. Alderson for Respondent.

TUTTLE, J., *pro tem.*—This action was brought to determine the rights of the parties in respect to certain executory contracts for the sale of real property, appellant and respondent being successive assignees of the vendor under said contracts.

Capuchino Golf Corporation, in 1926, was the owner of a tract of land in San Mateo County, and during that year engaged Stansbury Contracting Company to furnish materials and perform labor in improving said tract. In 1929 the Golf Corporation owed the Contracting Company approximately $152,000.

During this time the Golf Corporation had entered into executory contracts with various parties for the sale of some thirty-nine lots, which were a portion of said tract. None of said contracts was ever recorded.

Thereafter, and on June 1, 1928, the Golf Corporation, as security for the payment of said indebtedness, executed to the Contracting Company its note and gave its trust deed upon a portion of said land, which included *one* of said lots. This trust deed was recorded June 4, 1928. On December 14, 1928, the Golf Corporation assigned to the Contracting Company, according to the findings, all of said executory contracts. On January 12, 1929, the Golf Corporation executed its note and deed of trust in favor of the Contracting Company as bene-

ficiary and the said instrument was recorded on January 18, 1929. This trust deed covered all the said 39 lots under the contract of sale. On December 2, 1929, the Contracting Company assigned to respondent Hartman the said contracts and all moneys owing thereunder and also said deeds of trust. Neither the assignment of the contracts nor of the trust deed were recorded. Sale after default was had pursuant to said trust deeds, wherein respondent was beneficiary, and the latter at such sale purchased and became the legal owner of all of said lots. covered by said contracts in question. ▆ As appellant admits that the assignment under which it claims was made for security only, and as respondent, ever since the date last mentioned, has held the record title to said lots, the utmost relief which could be granted appellant would be a judgment that it has a right to the proceeds received from the purchasers under said contracts, until the indebtedness to appellant is discharged. The foregoing is a deraignment of respondent Hartman's title. In connection with the transaction, the trial court found that "E. A. Hartman, without notice of any alleged assignment to the said plaintiff, and without notice of any indebtedness due or owing from the Capuchino Golf Corporation, to plaintiff, purchased from said Stansbury Contracting Company, the said contracts, aforesaid notes and deeds of trust, all and singular, in good faith, and for a valuable consideration, and all the right, title and interest in and to the same, together with all moneys then owing or to become owing thereunder". This finding is not attacked by appellant.

Prior to the times mentioned, and on May 25, 1927, the Golf Corporation borrowed from Anglo California Trust Company the sum of $10,000, and gave as collateral security the said 39 contracts of sale. These contracts were delivered to the trust company, and ever since have been, and still are in its possession.

The trial court found that respondent Hartman was the owner and entitled to the possession of said executory contracts of sale, and entitled to collect the payments due thereunder. Judgment was entered accordingly. Plaintiff in said action, and appellant here, appeals from the judgment, and first attacks the findings as unsupported by the evidence.

Coming to appellant's claim and his source of title to said contracts, they are likewise based upon assignments of said

contracts from the Golf Corporation. It appears from the record that for some reason the Stansbury Company ceased work upon the property early in the year 1929. On March 8, 1929, appellant contracted with the Golf Company to continue the work for certain considerations, among which was the assignment to it by the Golf Company of said 39 contracts of sale, and the execution of a trust deed covering the same. On that date the contracts were duly assigned to appellant, and the trust deed executed. This work was completed by appellant about July 12, 1929, when it was agreed that there was an additional sum of $10,624.66 due. Thereafter, and on July 12, 1929, and as security for the payment of said sum, the Golf Corporation gave *another assignment* to appellant covering these 39 contracts. On July 26, 1929, appellant notified the trust company, holder of the contracts, of the two assignments from the Golf Company, which it held.

It is the contention of plaintiff and appellant that, as it was the first assignee to give notice to the holders of the contracts, it had a prior right to the same, even though its assignment was *subsequent* in point of time to that of Stansbury Company, the first assignee and the assignor of respondent. It relies upon the well-settled law of this state that ''Where . . . a person entitled thereto assigns a fund in the hands of a third person, the rule is established in this state that notice to the holder of the fund is necessary to render the assignment valid and effectual as against subsequent assignees without notice and for a valuable consideration''. (*Smitton* v. *McCullough,* 182 Cal. 530 [189 Pac. 686], citing *Graham Paper Co. v. Pembroke,* 124 Cal. 117 [56 Pac. 627, 71 Am. St. Rep. 26, 44 L. R. A. 632].) Respondent contends that the rule quoted must be limited in its operation to successive assignments of *choses in action,* and that it does not apply between assignees of an *interest in real property.* We are in accord with the view of respondent. An executory contract to convey real estate has been held to be a conveyance or transfer of real property, under the provisions of section 1093 of the Civil Code, and upon the ground that it effects a grant of the whole beneficial interest in the land. (*Jackson* v. *Torrence,* 83 Cal. 521, at p. 537 [23 Pac. 695]; principle reaffirmed in *Keese* v. *Beardsley,* 190 Cal. 465, at p. 473 [213 Pac. 500, 26 A. L. R. 1538].) We therefore hold that these contracts and the assignments thereof were not transfers of

a mere chose in action. They actually transferred an interest in real property. The distinction from the rule found in the Graham Paper Company case is pointed out in Pomeroy's Equity Jurisprudence, fourth edition, volume 2, where the author says, on page 1404, after discussing the Graham case: "Finally the special rule requiring a notice to the trustee or other holder of the legal title, in order to settle the priority among successive assignees, is confined to transfers of personal property, debts, money claims arising from contracts, funds, and the like; *it does not extend to nor embrace assignments of any equitable estates or interests in land. These latter are governed by the more general rules concerning priority, already stated.*" (Italics ours.) ■ Where the transfer is of an interest in real property, the assignment is entitled to recordation, and this is constructive notice to a subsequent assignee. Transfers of the character involved in the cases cited are not entitled to recordation and constructive notice does not arise therefrom. Hence the holding in the Smitton and Graham cases which requires actual notice to the holder of the fund in the hands of a third party, in an action between successive assignees. We therefore hold that where an assignment covers an interest in real property, the failure of the first assignor to give notice of his assignment to the debtor or holder of the fund will not necessarily defeat his claim as against a subsequent assignee, who gives such notice, and that the right of the latter to priority is dependent upon his being a *bona fide* purchaser for value, without notice of the prior assignment. (5 C. J., p. 956.) ■ Conceding that appellant purchased the assignments for value, did it take its assignments, which were subsequent by several weeks to those of respondent, without notice?

The *first assignment,* as between these parties, was made by the Golf Corporation to Stansbury Company on December 14, 1928. It was not recorded. But shortly thereafter, and on January 12, 1929, the original vendor, the Golf Corporation, executed a trust deed covering all these lots to a trustee with Stansbury Company as beneficiary. This deed of trust was duly recorded on January 18, 1929. Thereafter, and on December 2, 1929, said deed of trust was duly assigned to respondent. This assignment was not recorded. "An absolute warranty deed from the vendor in a land contract will operate as an assignment of all his rights in the land." (18

C. J., p. 296, sec. 276.) A deed of trust "transfers, for the purpose of the trust, all possible claims of the trustor in the property conveyed". (25 Cal. Jur., p. 39.) We therefore hold that this deed of trust operated as an assignment of all interest which the Golf Corporation may have had in the real property, including any interest which the latter may have had in these 39 executory contracts of sale. All the foregoing facts with reference to the execution, recordation and sale by the trustee to respondent were found by the court. Thus it appears that respondent was·not only prior in time in the matter of his assignment, but that his assignor also recorded its trust deed to the property several weeks before the assignment was executed to plaintiff, and this was constructive notice to the latter of the claim of the first assignee to these contracts. The sale under the trust deed operated to make respondent the owner of the contracts, transferring to him all rights which the Golf Corporation may have had therein. Title derived from such sale related back to the date of the execution of the trust deed. ■ If plaintiff had taken the time to examine the records, all of this would have been readily disclosed to it. The president of appellant corporation testified that he had not consulted the records of San Mateo County prior to the assignment to appellant. He stated that "the only information I·had was that there was no other trust deed except ours". In a matter affecting title to real property appellant should have gone further than to rely upon "information" given him. Appellant is conclusively presumed to have notice of the trust deed on the public records. Such notice is binding in the same manner as actual notice. (20 Cal. Jur., p. 233.) We therefore hold that the execution of the trust deed covering all of the real property described in said contracts of sale effected and operated as an assignment of said contracts to the trustee named in said trust deed; that the recordation of said trust deed was notice to appellant of such assignment; that appellant's loss, if any, was also occasioned by and through his own neglect in failing to examine the public records, and the rights of respondent in said contracts are superior to any rights which appellant may have acquired.

The case of *Mills* v. *Rossiter, Eureka Oil Burner & Mfg. Co.*, 156 Cal. 167 [103 Pac. 896], is relied upon by appellant. In that case the subsequent assignee took without notice, and

prevailed because of the negligence of the first assignee in failing to record his assignment of the contract of sale. Here, although the regular assignment was not recorded, the trust deed from the owner to the first assignee, covering the property, was recorded shortly after the execution of the original assignment. As we have stated, our conclusion is that the trust deed itself operated as an assignment and the recordation thereof was notice to appellant, who therefore was a "taker with notice".

■ It is contended that the assignment was by way of security and therefore did not work a transfer of an interest in real property. The assignee, to the extent of his interest, is the owner of the thing assigned as security. (5 C. J., p. 957; *In re Phillips,* 71 Cal. 285, p. 289 [12 Pac. 169].) There is no merit in this point.

■ It is next contended that the following finding lacks evidentiary support: "That the plaintiff in said transaction at all times dealt with J. B. Rogers solely and only as the agent and officer of the Capuchino Golf Corporation, and that at no time was the said J. B. Rogers the agent or partner of or in any fiduciary relation with the said Stansbury Contracting Company or said Charles Stansbury." We find in the record ample to sustain this finding, and to warrant this inference.

We find no error in the action of the trial court in denying the motion for new trial.

Each party to this appeal was innocent of any fraud or unfair dealing. The action of the Golf Corporation and its officers was most reprehensible in executing, successively, assignment after assignment to innocent parties who parted with valuable consideration and suffered loss through the failure of said officers to disclose the true situation. We believe that the trial court, in a difficult situation of this character, and as between these successive assignees, arrived at a conclusion which is just and equitable, and we see no valid reason for disturbing it.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 19, 1935.