RUFUS E. ROSE, RICHARD J. BOLLES AND FLORIDA STATE
DRAINAGE LAND COMPANY, A CORPORATION, *Appellants,* v:
JOHN W. HENDERSON, JENNIE H. MURPHREE, ALBERT A.
MURPHREE, HER HUSBAND, FLORA A. WALDO, and GEORGE
E. WALDO, HER HUSBAND, UNITED STATE SUGAR COM-
PANY, A CORPORATION, PAUL J. FRANKLIN and NONA G.
FRANKLIN, HIS WIFE, *Appellees.*

1. The enforcement by a court of equity of a specific perform-
   ance of a contract is not a matter of right in either party to
   such contract, but a matter for the exercise of a sound judi-
   cial discretion by the court, and should only be exercised
   when a decree for specific performance would be strictly
   equitable as to all the parties under the facts as they exist.

2. When three persons, a brother and two sisters, all married,
   who own by inheritance a large body of land, sign and seal
   a contract to sell and convey said lands en bloc, for a speci-

fied sum of money, and it does not appear that they intended to sever their interests in such sale and conveyance, but the contrary, and where the contract was not executed by the married women in accordance with Sections 2594 and 2462 of the General Statutes of 1906, and is not enforceable against them, a court of equity will not split the contract, and compel a specific performance of it by the brother alone, or by him and the husbands of his sisters.

Appealed from the Circuit Court for Leon County.

The facts in the case are stated in the opinion of the court.

*W. S. Jennings* and *W. H. Ellis,* for Appellants;

*T. L. Clarke* and *F. T. Myers,* for Appellees.

HOCKER, J.—On the 2nd of August, 1909, Rufus E. Rose, Richard J. Bolles and the Florida State Drainage Company filed a cross-bill in the original suit of the United States Sugar Company against themselves and the Henderson heirs. The substance of this cross-bill so far as it is necessary to be stated here, is as follows: After setting up the proceedings upon the original bill, the demurrers and answers thereto of the respective defendants therein, the cross-bill alleges that on the 2nd of October, 1908, the Henderson heirs, being seized in fee of the unsurveyed lands, the subject of this litigation, situated in Lee and DeSoto counties, Florida, of a total acreage of 98,276.83 acres, entered into an agreement with Rufus E. Rose and his associates for the sale of the same, which agreement was signed and sealed by the said parties by which the Henderson heirs, *viz*: John W. Henderson and Sarah E. Henderson, his wife, Jennie

H. Murphree and Albert A. Murphree, her husband, George E. Waldo and Flora A. Waldo, his wife, "covenanted and agreed for themselves, their successors, administrators and executors, for and in consideration of the sum of fifty thousand dollars to be paid as hereinafter mentioned, well and truly to convey by a good and sufficient deed with the usual covenants and warranty, the lands above described; or if the said heirs of John A. Henderson, deceased, should find themselves not in a position to convey by a valid and unencumbered title any or all of said lands, that then, in that event, such part or all of the said lands as the said Henderson heirs should be unable to so convey, should be excepted and reserved from the operation of said contract. The cross-bill alleges that the lands which the Henderson heirs might find themselves not in a position to convey by a valid and unencumbered title were a tract of about 7,960 acres of lands included and described in a certain certificate, issued under date of June 13th, 1892, by L. B. Wombwell as Commissioner of Agriculture of the State of Florida, under the Seal of the Department of Agriculture, a copy of which is made a part of the cross-bill marked Exhibit "A," which lands are included in the lands sold by the Henderson heirs to Rufus E. Rose; and also 3500 or 4000 acres of land, which although conveyed by the Trustees of the Internal Improvement Fund to the Henderson heirs, by the deed dated December 28th, 1904, have never been patented by the United States Government to the State of Florida, and to which the Henderson heirs had not and have not at the present time a valid and legal title; that the Henderson heirs and Rufus E. Rose knew at the time of the execution of the said contract that the certificate containing the 7960

acres was in the possession of Barnett National Bank of
Jacksonville which claimed a lien on said lands through
having made full payment of the value thereof to John A.
Henderson, deceased, and that said claim was conceded
at the time of the execution of said contract, and that
the fact that the said 3500 or 4000 acres were not
patented was also known, and the parties to said con-
tract desired to except lands from the operation of the
contract of sale; that said lands were not specifically
described by townships and ranges as the parties did not
then have the information; that it was provided in said
contract between the Henderson heirs and Rose that an
amount of money proportionate to the acreage, of the
said excepted lands when ascertained should be deducted
from the purchase price of $50,000.00.

The cross-bill further alleges that it was covenanted
and agreed by the Henderson heirs to furnish an abstract
of title to said lands together with a valid and legally
executed deed sufficient to convey a valid and unen-
cumbered title to the above described lands, or the pro-
portionate part that could be conveyed by valid and
unencumbered title, and deposit said deed in escrow
in the Barnett National Bank of Jacksonville, Florida;
and that the purchaser, Rufus E. Rose, would within
60 days after notice to his attorney W. S. Jennings, of
the deposit of said deed in escrow, pay one-half of the
purchase price, to-wit, the sum of $24,500.00 in addition
to the sum of $500.00 which was duly paid to the Hen-
derson heirs at and before the execution and delivery of
said agreement, and that the balance of the purchase
price would be paid one year from the date said deed
should be placed in escrow; provided that in the event
the said heirs of John A. Henderson at any time before

the deferred payment fell due should find themselves in a position to convey a valid and unencumbered title to any of said lands that had been excepted from the operation of said agreement at the time the deed was placed in escrow, that then such lands should be conveyed by the Henderson heirs to the said R. E. Rose at the same price per acre. A copy of the agreement between the Henderson heirs and R. E. Rose is attached to the cross-bill as Exhibit "B," and made a part of the cross-bill. Said agreement is as follows:

## EXHIBIT "B"

### ARTICLES OF AGREEMENT.

THIS INDENTURE, Made and entered into this the 2nd day of *October*, A. D. 1908, between John W. Henderson, and Sarah E. Henderson, his wife, A. A. Murphree and Jennie H. Murphree, his wife, of the County of Leon, State of Florida, and Geo. E. Waldo and Flora A. Waldo, his wife, of the City of New York, State of New York, the said John W. Henderson, Jennie H. Murphree and Flora A. Waldo, being the children and only heirs at law of the late John A. Henderson, deceased, late of said Leon County, who departed this life intestate on the 9th day of August, A. D. 1904, parties of the first part, and R. E. Rose and his associates of the county of Leon, State of Florida, party of the second part:

WITNESSETH: That Whereas, the said party of the second part, having heretofore submitted a proposition on behalf of himself and associates for the purchase of certain lands situated in the counties of DeSoto and Lee, in the State of Florida, being the lands described and embraced in deed No. 15898, executed by the

Trustees of the Internal Improvement Fund of the State of Florida to the parties of the first part, under date of December 27th, A. D. 1904, and more particularly described as follows, to-wit: * * * * * Of a total acreage of 98,276.83 acres, upon the following basis, namely:

That the parties of the first part were to execute a good and sufficient deed conveying a clear and unencumbered title to the above described lands unto the party of the second part, his associates or order for and in consideration of the sum of Fifty Thousand ($50,-000.00) Dollars, to be paid as follows:

Twenty-five Thousand ($25,000.00) Dollars cash upon delivery of a good and sufficient deed conveying a valid and unencumbered title to said lands, as aforesaid, which deed to be placed in escrow, not to be delivered until the remainder of the purchase money, namely: Twenty-five Thousand ($25,000.00) Dollars should be paid in or before one (1) year from date of said deed, together with interest at the rate of Six per cent (6%) per annum from the date of said deed to the date of the payment, which proposition having been duly considered and being found acceptable to the parties of the first part, as a general proposition, subject to certain modifications to be hereinafter more particularly set forth,

IT IS THEREFORE, mutually covenanted and agreed by the parties hereto as follows:

FIRST—The parties of the first part for and in consideration of the sum of One ($1.00) Dollar to them in hand paid, by the said party of the second part, the receipt whereof is hereby acknowledged, does hereby covenant and agree to sell, bargain, and convey, and by these presents does hereby covenant and agree to bar-

gain, sell and convey unto the said party of the second part, and his associates the above described lands, and in further consideration of the payment of Fifty Thousand ($50,000.00) Dollars, in two payments, subject to modifications and exceptions hereinafter set forth, namely: That Twenty-five Thousand ($25,000.00) Dollars shall be paid and accepted upon the deposit in escrow of a good and sufficient deed of conveyance with the usual covenants and warranty, conveying a valid and unencumbered title to the lands heretofore more partiularly described in this Instrument, or such proportionate part of said lands as the parties of the first part shall find themselves in a position to convey a valid and unencumbered title to, in conformity with this agreement.

SECOND—The remainder or balance of said purchase money, being Twenty-five Thousand ($25,000.00) Dollars, or the proportionate part thereof that the parties of the first part shall be entitled to as the balance of the purchase money of the lands that they shall find themselves in position to convey by a valid and unencumbered title, in conformity with this agreement, at the end of one year after the payment of the first Twenty-five Thousand ($25,000.00) Dollars, or as soon thereafter as a final determination shall be had of any litigation that may be instituted by the parties of the first part or others, relaing to claims against or the title of said lands.

THIRD—It is mutually understood and it is hereby covenanted and agreed on behalf of the parties of the first part that should they find themselves not in position to convey by a valid and unencumbered title any or all the lands hereinbefore described, that then, in that event, such part or all of the said lands as the parties of the

first part shall be unable to so convey shall be excepted and reserved from the operation of this contract and the proportionate allowance shall be deducted from the purchase money, Provided, That in the event that such lands can be, subsequent to the deposit of said deed in escrow, conveyed by the parties of the first part, by valid and unencumbered title during the term of the deferred negotiations, that the said party of the second part shall be entitled to such conveyance upon the payment of the proportionate price named in these articles of agreement for such lands.

FOURTH—The party of the second part, on behalf of himself and his associates, hereby covenants and agrees to accept the proposition as above set forth, with its modifications and exceptions, and to deposit with the BARNETT NATIONAL BANK of Jacksonville, Florida, upon the execution of this agreement, the sum of Five Hundred ($500.00) Dollars, and the further sum of Twenty-four Thousand Five Hundred ($24,500.00) Dollars upon the furnishing of an abstract of title to such lands or such portion thereof as the parties of the first part find themselves in position to convey with a valid and unencumbered title as above provided, together with a valid and legally executed deed sufficient to convey such valid and unencumbered title to the party of the second part and his associates to said above described lands, or the proportionate part thereof to which a valid and unencumbered title can be conveyed; the said deed to be deposited in escrow with said BARNETT NATIONAL Bank of Jacksonville, Florida, and to be delivered to the party of the second part and his associates upon the final payment to the parties of the first part of the balance of the purchase money that shall be.

due to the parties of the first part under the terms of this agreement; said remainder or balance of the purchase moneys to bear interest at Six (6%) per cent per annum from the date of the deposit of said deed in escrow.

PROVIDED,, That said deposit of Twenty-four Thousand Five Hundred ($24,500.00) Dollars may be made by the party of the second part at any time within Sixty (60) days after notice to W. S. Jennings, Attorney for the parties of the second part, of the deposit of said deed in escrow conveying such valid and unencumbered title to said lands or the proportionate part thereof as the parties of the first part find themselves in a position to convey. The full amount of Twenty-five Thousand ($25,000.00) Dollars so deposited by the parties of the second part to be thereupon at once paid over by said BARNETT NATIONAL BANK of Jacksonville, Florida, to the party of the first part.

FIFTH—It being mutually understood, covenanted and agreed by the parties hereto that the proportionate acreage above set forth and referred to shall mean the ascertainment of the total acreage described and conveyed by the deed executed by the Trustees of the Internal Improvement Fund to the heirs of John A. Henderson, deceased, aforesaid, and the Fifty Thousand ($50,000.00) Dollars, total purchase price agreed upon, together with the amount per acre that such purchase price bears to the total acreage, and upon this basis any acreage deducted from the total that the proportionate amount for said deficiency in acreage shall be deducted from the total purchase money and that the total purchase money shall be the amount represented by the total acreage that the parties of the first part find themselves

in position to convey, the same to be paid for as above provided.

SIXTH—It is hereby further agreed that the parties of the second part shall take the lands to be conveyed to them as aforesaid subject to all taxes and assessments of the year 1908 and thereafter; the parties of the first part to have the right to pay such taxes and assessments and to add the sum to the purchase price at the option.

SEVENTH—It is hereby further agreed that the amount of the drainage taxes for the year 1907 on said lands so to be conveyed by the parties of the first part, may be deducted from the final payment and remain in escrow on deposit in BARNETT NATIONAL BANK of Jacksonville, until final determination of the drainage suit now pending, and if drainage taxes shall be held void, then said amount so held in escrow by BARNETT NATIONAL BANK of Jacksonville, Florida, shall be paid over to the parties of the first part; and if such drainage taxes of 1907 shall be held valid, then in that event and case, the said amount shall be repaid by the BARNETT NATIONAL BANK of Jacksonville, Florida, to the party of the second part.

EIGHTH—It is further hereby agreed that if the parties of the second part shall fail to carry out the terms of this agreement that said sum of Five Hundred ($500.00) Dollars so deposited shall at the option of the parties of the first part be paid to the parties of the first part by said depositaries, as liquidated damages, and this contract shall thereupon be at an end.

NINTH—It is further mutually covenanted and agreed between the parties hereto that these articles of agreement shall be binding upon the successors, administrators and executors of the parties hereto.

IN WITNESS WHEREOF, The parties hereto have hereunto set their hands and seals the day and year first above written.

Executed in triplicate.

Signed, sealed and delivered in presence of:

WITNESSES:

Day J. Apte.

R. W. Apte.

|  |  |
|---|---|
| John W. Henderson | (SEAL) |
| Sarah E. Henderson | (SEAL) |
| A. A. Murphree | (SEAL) |
| Jennie H. Murphree | (SEAL) |
| George E. Waldo | (SEAL) |
| Flora A. Waldo | (SEAL) |
| By G. E. Waldo, Agt. | (SEAL) |
| Rufus E. Rose | (SEAL) |

Individually and for Associates

..............................................................................(SEAL)

.........................................................  ..  ...............(SEAL)

.........................................  ...........  ......................(SEAL)

..  ..........  ...  ......................................................(SEAT.)

The cross-bill then alleges the transfer and assignment for a valuable consideration by Rose of all his interest in said lands to R. S. Bolles; that Bolles by deed transferred and assigned for a valuable consideration all his interest in the contract of the Henderson heirs and the lands therein described to the Florida State Drainage Land Company, a corporation duly organized and existing under the laws of the State of Colorado, which has been duly licensed and qualified to do business within the State of Florida. It is alleged that these transfers are all duly recorded.

The cross-bill alleges that the Henderson heirs found

themselves in a position to convey a valid and unen-
cumbered title to all said lands, except those that were
excepted, *viz*, the unpatented lands and those covered by
the certificate held by the Barnett National Bank, and
as to these the orators have not insisted upon or
demanded a deed from the Henderson heirs. The cross-
bill alleges that the Henderson heirs have failed and
refused to furnish the abstract of title as they agreed to
do, but that orators have investigated the title of the Hen-
derson heirs, and have found that the said heirs were
at the time of the execution of the said contract and have
at all times since been, and still are, in a position to
convey a valid and unencumbered title to all said lands,
except the land referred to as excepted; that orators
are ready and willing to accept and pay for same in
manner and form as provided in said contract, regard-
less of the alleged claim of the United States Sugar Com-
pany, or of any other person or persons, and that orators
are ready, willing and able to specifically perform said
contract, and hereby offers to keep specifically each and
every covenant agreed to be kept and performed by R.
E. Rose. The cross-bill alleges that orators have many
times demanded that the Henderson heirs shall execute
and place in escrow the deed in accordance with the
agreement (excepting the lands referred to as excepted),
but that the Henderson heirs have refused, and still
refuse to make and place said deed in escrow, although
orator, the Florida State Drainage Company has offered
to pay the said one-half of the purchase price of said
lands, upon the execution of a special warranty deed
conveying said lands (with said exceptions) and further
to pay the balance within one year from date said deed
was placed in escrow, in accordance with the terms of

said agreement. It is further alleged that the alleged excuse for failure to comply with said contract is that the equitable claim of the United States Sugar Company constitutes a valid incumbrance upon the property, but orators allege said claim is worthless and invalid, and that J. J. Dunne and J. M. Kreamer and their pretended assignee, by their failure to comply with the terms of their contract with John A. Henderson have long since forfeited their rights under said contract. There are a number of allegations as to the insolvency of J. J. Dunne and of the United States Sugar Company, and that said company has never been ready, willing or able to comply with the contract with John A. Henderson, and has never offered or tendered to pay for the lands, which it is unnecessary to consider in this connection. The cross-bill alleges that soon after the execution of the contract of the Henderson heirs, orator Bolles purchased 500,000 acres of land of the Trustees of the Internal Improvement Fund, and entered into a contract with them whereby $500,000 of the purchase price was to be expended in draining work in the Everglades where the lands involved in this suit are located; that the prospect of drainage has caused the value of the lands involved in this suit to rise from approximately fifty cents per acre, the price at which the Henderson heirs were then willing to sell them to your orators as appears from their contract, to two dollars or more per acre; that this fact has instigated J. J. Dunne who is the President and real owner of the United States Sugar Company to resurrect his long since forfeited and almost forgotten contract with John A. Henderson, deceased, and to offer at this late hour and day to perform his long since forfeited promises, etc. Much more is alleged in regard to this contract with Dunne

which it is unnecessary to repeat here, as these questions are dealt with in a former part of this opinion.

The cross-bill prays that the claim of the United States Sugar Company may be adjudged null and void, and for specific performance of the contract by the Henderson heirs; for relief as to any part or portion of said lands, and for general relief. Attached to the cross-bill as parts thereof are the transfers by Rose to Bolles, and by the latter to the Florida State Drainage Land Company.

On the 13th of August, 1909, John W.Henderson and Sarah E. Henderson, his wife, Jennie H. Murphree and Albert A. Murphree, her husband, and Flora A. Waldo and George E. Waldo, her husband, referred to in the opinion as the Henderson heirs, filed a demurrer to the cross-bill containing in substance the following grounds:

1. There is no equity in the cross-bill.

2. That it appears from the face of the contract, specific performance of which is sought these defendants reserved the discretion to determine for themselves when they might be in a position to convey by valid and unencumbered title any or all of the lands therein described, and it is not shown that defendants have determined they are in a position to make such conveyance.

3. That it does not appear from the cross-bill that any real or apparent encumbrance or cloud, existing when the contract was made has been removed, or that they have a better title or right than at said time.

4. It appears from the cross-bill that since said alleged contract was made, the complainant in the original bill has set up a claim to said lands and by said bill is seeking to compel defendants to convey said lands, under an alleged prior contract, superior in equity to that of cross-complainants, and that pending said

original bill the court will not compel defendants to execute a deed with warranty against said claims in the original bill

5.   That this court will not control the discretion reserved by defendants in the alleged contract with them, and compel them to execute a deed with warranty against their consent.

6.   That the matters set up in the cross-bill are not responsive to the original bill against cross-complainants, but are matters proper only to an original bill.

7.   That Rose and Bolles have no interest in the matters in controversy, and are not proper parties.

8.   That the cross-bill is multifarious.

9.   That the contract set up in the cross-bill is invalid.

10.   It appears from the cross-bill that the contract set up therein is not executed and acknowledged by the defendants Flora A. Waldo and Jennie H. Murphree as required by the laws of Florida, and is not binding on them.

The demurrer of the United States Sugar Company need not be noticed in this connection.

On the 11th day of October, 1909, the cross-complainants filed an amendment to their cross-bill, alleging in substance, that on the 19th of August, 1909, the defendants Jennie H. Murphree and Albert A. Murphree, her husband, appeared before a Notary Public at Gainesville, Florida, and duly acknowledged the execution of the contract made with Rufus E. Rose, dated October 2nd, 1908, and that Jennie H. Murphree, upon a separate and private examination, which separate and apart from her husband acknowledged to said notary, that she made herself a party to and joined in the execution of the

aforesaid contract, for the purpose of renouncing and relinquishing and conveying all her dower, right of dower right, title and interest or separate estate, statutory or equitable, and separate property in and to the lands therein described, freely and voluntarily, and without any compulsion, constraint, apprehension or fear of or from her husband. It is alleged that the certificate of the notary has been attached to the original contract in Flora A. Waldo had executed a power of attorney in possession of orators, and a copy is attached to the cross-bill and made a part of it. It is further alleged in the amendment to the cross-bill, upon information and belief, that prior to the execution of the contract with Rose, writing, sealed and acknowledged whereby she appointed George E. Waldo her attorney in fact, and authorized him, specially or generally to execute the contract with Rose; that Waldo had represented to cross-complainants and their solicitor he had such power of attorney, and that cross-complainants relied on his representation and accepted the execution of the contract by Waldo as attorney in fact of Flora A. Waldo. It appears that an application to file the foregoing amendment to the cross-bill came on to be heard before the Circuit Judge at the time of the hearing of certain motions and demurrers in said cause, and the application was granted and the amendment was filed, on the same day the Circuit Judge heard arguments on the demurrer of the Henderson heirs to the cross-bill, and that after consideration, he over-ruled each and every ground of "the ten grounds alleged therein." The defendants in the cross bill were allowed until the 15th of November, 1909, to answer the cross-bill.

On the 15th of November, 1909, the Henderson heirs filed their joint and several answer to the cross-bill as

amended, the substance thereof, so far as it is necessary
to state it, is as follows: They admit that on the 2nd
of October, 1908, the legal title to the lands in dispute
was in John W. Henderson, Jennie H. Murphree and
Flora A. Waldo, and that on that day an instrument in
writing was signed and sealed in triplicate by defendants
John W. Henderson and Sarah E. Henderson, his wife,
Jennie H. Murphree and Albert A. Murphree, her
husband, and George A. Waldo, and that the name of
Flora A. Waldo was also signed to said instrument by
defendant George E. Waldo as agent, and Rufus E. Rose
signed the same for himself and "associates." They
allege that the execution of said instrument was not
acknowledged by any of the persons signing the same,
nor was any separate examination made or acknowledg-
ment taken by any authorized officer of the execution of
said instrument by the married women defendants Sarah
E. Henderson, Jennie H. Murphree and Flora A. Waldo,
or either of them as provided and required by the laws
of the State of Florida, in contracts by married women
for the sale of their interests in lands, and the said writ-
ten instrument was not and is not the contract of the
defendants, the said Sarah E. Henderson, Jennie H.
Murphree and Flora A. Waldo, or either of them, and
the said written instrument is not their contract; that
said instrument was signed in triplicate, one of which
was delivered to Rufus E. Rose, one deposited with the
Barnett National Bank of Jacksonville, and the remain-
ing one·was retained by these defendants, and is made a
part of this answer to the original bill, and is referred to
as part of this their answer to· the cross-bill, "and that
the contents, purport and legal effect of said written
instrument be ascertained and determined by the court

from an inspection of the same, and not from the recitals and allegations of the cross-bill." They admit that they had some notice of the certificate attached to the cross-bill marked Exhibit "A," and that some small portion of the lands described therein had not been patented to the State; but allege that these matters were not seriously considered as an encumbrance on their title for the reason that the title to any unpatented lands included in the deed from the Trustees of the Internal Improvement Fund would inure to the defendants as soon as the lands were actually patented to the State, and for the reason that the certificate, Exhibit "A" to the cross-bill embodied a transaction between Dunne and one Barnett with which the defendants were not concerned, and they deny and aver that it is not true as alleged in the cross-bill that the parties to said contract (evidently meaning the contract with Rose, called by them an "instrument in writing") had in mind and referred only to the lands embraced in said certificate, and said unpatented lands when they provided in said written instrument, that if defendants "should find themselves not in a position to convey by valid and unencumbered title any or all of said lands, that then in that event, such part, or all of the said lands as they should be unable to so convey should be excepted and reserved from the operation of said contract." But they aver that the parties had in mind and referred to, and intended to refer to, all the lands described in said instrument, when said provision was incorporated therein, and that the same had special reference to and was intended to guard against the claims set up to all the said lands by the complainant in the original bill in this cause, under some agreement or contract entered into between John A. Henderson in

his life-time with J. J. Dunne and J. M. Kreamer for the sale and purchase of the whole body of said lands; and that it was contemplated and intended by the parties to said instrument that said claim which said parties knew had been asserted by J. J. Dunne, should in some way be disposed of, cancelled or removed, before these defendants would be in a position to convey by a valid and unencumbered title the lands in said instrument described, and with this view and purpose the said provision was incorporated in the instrument, these defendants being unable to give a warranty against said Dunne claim, and said Rufus E. Rose for himself and his associates being unwilling to accept a deed from the defendants without such warranty. The answer admits that an amount should be deducted from the purchase money to be paid proportionate to any acreage of said lands that might be accepted and reserved from the operation of said instrument, but deny that such provision was restricted and referred to and was meant and intended to refer only to the lands embraced in the Barnett certificate and the small body of unpatented lands..

The answer admits that the written instrument aforesaid provided that these defendants should furnish an abstract of title to said lands and execute and deposit in escrow a full warranty deed to said lands, or such parts thereof as defendants found themselves in a position to convey a valid and unencumbered title to, and that payment should be made as set out in the cross-bill, but they aver that the duty to make such abstract has not by the terms of said instrument in writing devolved on defendants for the reason that they have not since the signing of said instrument found themselves in a position to

convey by a valid and unencumbered title all or any part of the lands described.

In their answer to the amendment to the cross-bill, the defendants Albert A. Murphree and Jennie H. Murphree say, that they deny that before a notary public on the 19th of August, 1909, they acknowledged that they executed the writing dated October 2nd, 1908, for the uses, purposes and consideration therein expressed; and the defendant Jennie H. Murphree denies that she was examined by said notary public touching her execution of said paper, and denies that she acknowledged before the said notary the execution of said paper in manner and form as set out in said amended paragraph and in the certificate afterwards made by the said notary; and alleges that the said certificate so made by the notary is false and fraudulent and the recitals thereof are not true in substance or fact. The answer alleges that if the facts alleged are true, it appears that Jennie H. Murphree was examined only as to the execution of one of the three triplicate original papers, and that such examination was made and her acknowledgment taken and certified long after the filing of the original cross-bill; that prior to such examination and acknowledgment said instrument had no force or effect as the contract of a married woman defendant, and that if said examination and acknowledgment are effective for any purpose, said instrument became the contract of said Jennie H. Murphree on August 19th, 1909, and had no existence when the cross-bill was filed. These defendants claim the same benefit of this special matter as if they had demurred to said cross-bill as amended.

The defendant George E. Waldo says that neither on the 2nd of October, 1908, nor prior nor since, nor at any

other time has he had or held any written power of attorney from defendant Flora A. Waldo authorizing him to execute the said paper or any other contract, or to do or perform any act for and on behalf of said Flora A. Waldo, and that in signing the said instrument he did not presume or pretend to act as attorney in fact for said Flora A. Waldo, but signed her name as agent only, as will appear by an inspection of said instrument. He denies that he pretended or represented to Rufus E. Rose, or his solicitor, or any other person that he had such written authority to execute for her any contract or conveyance, or to do or perform for her any other act.

The answer further alleges that there has been no change in the title of defendants since the written instrument referred to was signed; that when it was signed it was understood among all parties there was an outstanding unadjusted claim to said land arising out of the contract between Dunne and Kreamer of one part, and John A. Henderson of the other, upon which some money had been paid to John A. Henderson, and that it was well understood that these defendants would not execute a deed with full warranty until said claim was adjusted and removed, and with this view the written instrument was signed; that the United States Sugar Company is now asserting in this clause a claim to said lands, and that these defendants will abide the judgment of this Honorable Court thereon, rather than the opinion of cross-complainants.

The answer further alleges that though the cross-complainants may be willing to pay for said lands, and except the deed of these defendants fully warranting the title to same, these defendants feel that they ar not in a

position to execute such a conveyance, pending this suit, and that in and by the express terms of said written instrument these defendants reserved the right, in their discretion to determine for themselves when they might be in a position to execute with safety a full warranty deed to the whole or any part of the lands. The answer avers that these defendants prefer to abide the judgment and determination of the court in this cause upon these questions, and until such determination by the court will rest upon their reserved right to determine for themselves whether they are in a position to convey to cross-complainants a valid and unencumbered title to all or any part of said lands.

The answer alleges that prior to the signing of the said instrument in writing, and during the negotiations that led up to the same, these defendants gave Rufus E. Rose and his attorney, such information as they had respecting the claims to Dunne and Kreamer, which was then regarded as a cloud or encumbrance on the title, against which these defendants were unwilling to give a warranty, and this occasioned the provision in the written instrument, "if the heirs of John A. Henderson, deceased, should find themselves not in a position to convey by a valid and unencumbered title any or all of said lands, that then in that event such part or all of the said lands as the said Henderson heirs should be unable to so convey should be excepted and reserved from the operation of said contract."

The answer denies that on the 2nd of October, 1908, when defendants signed the written instrument of that date, they treated and recognized as forfeited, rescinded and terminated, the contract entered into by John A. Henderson with Dunne and Kreamer, but aver that it

was their expressed purpose to carry out in good faith on their part any contract made by John A. Henderson in his lifetime with Dunne and Kreamer for the sale of said lands. These defendants deny any collusion with complainants in the original bill, and aver that their only purpose is and has been to submit to the court all the facts as they really exist and to abide the judgment of the court thereon.

Replication was filed to this answer, and the cause was referred to a master to take and report the testimony—upon the issues made on both the original and cross-bill. The testimony was taken and filed, and the causes came on for final hearing before the Circuit Judge. The relief prayed for in both the original and cross-bill was denied, and each of said causes was dismissed. An appeal from the decree was taken by the complainants in the cross-bill, and they have filed here fifty-seven assignments of error, among them, that the court erred in refusing the relief prayed for in the cross-bill. The larger part of these assignments are based on rulings relating to the admissibility of testimony. We find no occasion to refer to them specifically as the material facts are all shown by undisputed testimony. The Henderson heirs have filed no cross assignments of error upon the ruling of the Circuit Judge overruling their demurrer to the cross-bill.

The main question presented is whether the instrument in writing called an indenture dated the 2nd of October, 1908, between John W. Henderson and Sarah E. Henderson, his wife, A. A. Murphree and Jennie H Murphree, his wife, George E. Waldo and Flora A. Waldo, his wife—the said John W. Henderson, Jennie H. Murphree and Flora A. Waldo being the children and only heirs

at law of John A. Henderson, deceased, parties of the first part, and R. E. Rose and his associates, parties of the second part, is such a contract as a court of equity will specifically enforce against the parties of the first part.

Section 2594 General Statutes of 1906, is as follows: "Coverture shall not prevent a decree against husband and wife to specifically perform their written agreement to sell and convey the separate property of the wife, or to relinquish her right of dower in the property of the husband, but no agreement for the sale or conveyance of her real property or for relinquishment of dower, shall be specifically enforced unless it be executed and acknowledged in the form prescribed for conveyance of her real property, and for relinquishment of dower."

Section 2462 General Statutes, provides that "to render such conveyance, mortgage or relinquishment whether of separate estate or of dower effectual to pass a married woman's estate or right, she must acknowledge, before some officer authorized to take acknowledgments of deeds, separately and apart from her husband, that she executed the same freely and voluntarily, and without compulsion, constraint, apprehension or fear of or from her husband, and the officer's certificate shall set forth all the foregoing requirements."

It is apparent from an inspection of the contract that it was not acknowledged before an officer as provided in the foregoing sections by any one of the married women, at the time the cross-bill was filed. It was acknowledged by Mrs. Murphree after the cross-bill was filed, which fact is stated in an amendment to the cross-bill, and which we will consider later. The contract was then only executed by John W. Henderson, one of the three

heirs of John A. Henderson, deceased, and by the husbands of his two sisters, so as to import any legal obligation.

In the case of Knox v. Spratt, 23 Fla. 64, 6 South, Rep. 924, this court said: "It seems to be now settled that the enforcement of a specific execution of a contract is not a matter of right in either party, but a matter of sound reasonable discretion in the court. Story's Eq. Jur., Sec. 742; Blackwelder vs. Lovelace, 21 Ala. 371. And the court uniformly refuses to decree a specific performance except in cases where such decree would be strictly equitable. The doctrine that in case the vendor is unable to comply with the contract by reason of not having a legal title to all the land sold, yet that the vendee is entitled to a specific performance of the contract for such as lies in the power of the vendor to convey with compensation for the residue, is undoubted. This principle, however, is qualified in its operation and cannot be invoked by a purchaser who at the time of the making the contract had notice of the fact that the vendor had a limited interest in the land. See White & Tudor's Leading Cases, p. 1071, Vol. 2, Pt. 2, and cases there cited."

It is perfectly evident that in the instant case Rose and his associates at the time the contract was signed, knew exactly what the interest of each of the Henderson heirs was in the lands described therein. It is perfectly evident that under the statutes we have quoted this so-called indenture or contract was not when the cross-bill was filed of any legal force as to Mrs. John W. Henderson, Mrs. Murphree or Mrs. Waldo; but it is contended by the Florida State Drainage Company that the contract was then and is now binding in law on John W. Henderson,

and that Mrs. Murphree and her husband acknowledged it properly on the 19th of August, A. D. 1909, a fact set forth in an amendment to the cross-bill filed on the 11th of October, 1909, and that it should be enforced in this proceeding against them. On the other side it is contended that no cause of action existed against Mrs. Murphree when the cross-bill was filed, and for that reason the suit against her cannot be sustained. The doctrine that the cause of action must exist at the time a suit is commenced seems to be of almost universal application. It is possible that there is a relaxation of the rule in suits whose objects are to have a complete accounting between the parties. It may be too, that in a case of unusual hardship the courts would be justified in not adhering strictly to the rule. As was said by Judge Brewer in the case of Smith v. Smith, 22 Kan. 699, text 703, "The circumstances must be such as to excuse the premature commencement of the action, and to show that the interests of justice require the change, rather that the dismissal of the present and the commencement of a new action. And in this, much must be left to the discretion of the trial court. Unless some greater wrong is shown than the mere matter of delay and costs, ordinarily the action of the court in refusing leave to file a supplemental petition will not be ground for reversal." No authorities are cited by Judge Brewer, and we have seen none to support this views. It must be noticed, however, that in the instant case no supplemental bill was filed. There was simply an amendment to the original cross-bill.

In the case of Lewis v. Fox, 122 Cal. 244, 54 Pac. Rep. 823, it was held that where an original cross-complainant failed to show a cause of action, it can not be supplied by a supplemental cross-complaint showing a cause of

action accruing subsequently to the filing of the original cross complaint.    See  Marianna & B. R. Co. v. Maund, 62 Fla., 538, 56 South. Rep. 670;   Carn v. Haisley, 22 Fla. 317 text 320;  Wattson v. Thibou, 17 Abb. Prac. (N. Y.)  184. But it is contended by appellants that the amendment to the cross-bill was filed by leave of court, and as there is no cross-appeal or cross-assignments of error on the part of Mr. and Mrs. Murphree, they are not in a situation to object here to the amendment.   Granting that this is a correct position, and that the contract as acknowledged by Mrs. Murphree is properly before us, yet in view of the fact that the contract has not been acknowledged by Mrs. Henderson or by Mrs. Waldo, as provided by law, we still have a question which is discussed later—*i. e.* can the contract be split and enforced only against Mrs. Murphree and her husband and John W. Henderson? There is scarcely any conflict of authority upon the proposition that if one person contracts to sell a parcel or tract of land representing himself as the owner of the whole and the vendee is not informed as to his interest and it turns out that he does not own the title to all he contracted to sell, a court of equity will not permit him to decline to convey what he owns, but at the instance of the vendee will compel him to perform his contract as far as he can do so, with an abatement of the purchase price.   Most of the authorities cited by appellees are of that kind.   Lord Eldon, in Mortlock v. Buller, 10 Ves. Jr., 292, text 315, thus stated this rule:  "If a man, having partial interests in an estate, chooses to enter into a contract, representing it, and agreeing to sell it, as his own, it is not competent to him afterwards to say, though he has valuable interests, he has not the entirety; and therefore the purchaser shall not have the

benefit of his contract.   For the purpose of this jurisdiction, the person contracting under those circumstances, is bound by the assertion in his contract; and, if the vendee chooses to take as much as he can have, he has a right to that, and to an abatement; and the court will not hear the objection by the vendor, that the purchaser cannot have the whole."   See note to Eppstein v. Kuhn, (225 Ill. 115, 80 N. E. Rep. 80) 10 L. R. A. (N. S.) 117; Castle v. Wilkinson, L. R. 5 Chan App. Cas. 534.   See Price v. Griffith, 1 De Gex M. & G. *80, for some qualification of this rule.   Also Knox v. Spratt, *supra*.   But when two or more persons enter into a contract with another agreeing to sell the latter an entire tract or body of land, and it turns out that some one or more of the vendors cannot be compelled to convey his or their interest in the land, a question is then presented upon which there is not unanimity of opinion in the courts. The English rule is stated in Lumley v. Ravenscroft, L. R. 1 Q. B. Div. (1895) 683, text 684, by Lindley, L. J., as follows.   "This is an appeal from an order made by Day, J., granting an injunction against one of two defendants in the action, Alice Ravenscroft, restraining her from granting a lease of certain property in St. James's Street to any other person than the plaintiff until after the trial of the action.   The case is a singular one. There is what on the face of it appears to be a valid binding agreement for the lease of these premises to the plaintiff, signed by the plaintiff and by Moore, as agent for the defendants.   The contract is contained in two letters of October 5, 1894.   If Moore's principals were both of age, there would be a complete contract and no difficulty in the case.   But unfortunately one of the principals is an infant nineteen years of age, and the

agreement is unquestionably an agreement for a lease by the two. It is an agreement by the two with the plain- tiff for a lease to him of certain property, of which, as it appears, a lease was being granted to the two. What is the law? Specific performance is out of the question. You cannot get specific performance against an infant; and upon the evidence before us no case is made out for specific performance against the other defendant either. This case is not within the exception as to misrepresenta- tion or misconduct stated in *Price* v. *Griffith* (1) and *Thomas* v. *Dering* (2), but comes within the general rule that where a person is jointly interested in an estate with another person and purports to deal with the entirety specific performance will not be granted against him as to his share. The plaintiff's only remedy is by way of damages. As to that I say nothing. But if it would be wrong to grant specific performance, it follows that it would be wrong to grant an injunction. The appeal must succeed, and the order of Day J. must be discharged; but the costs here and below will be costs in the action.

A. L. Smith, L. J. On the facts before us I am of opinion that a case for specific performance has not been made out against the two defendants or against either of them. That being so, the injunctions fails. *Appeal allowed.*" Fry on Specific Performance (5th ed.) §823; Castle v. Wilkinson, *supra*. In the United States the following cases are in line with Lumley v. Ravenscroft, *viz*: Olsen v. Lovell, 91 Cal. 506, 27 Pac. Rep. 765; Jack- son v. Torrence, 83 Cal. 521, 23 Pac. Rep. 695. The case of Tillery v. Land, 136 N. C. 537, 48 S. E. Rep. 834, is an interesting one. It was a suit brought by L. F. Tillery against E. M. Land, John H. Taylor, *et al.*, for the

specific performance of the following contract: "This contract, made this October 27, 1902, by and between E. M. Land for himself and as agent for the other owners, of the first part, and L. F. Tillery, of the second part, shows that the party of the first part agrees to sell to the party of the second part the tract of land in Nash County, near the town of Rocky Mount, adjoining the lands of L. F. Tillery, J. R. Green and others, known as the 'Taylor and Land tract,' containing about 577 acres, for which the party of the second part agrees to pay the sum of $6,500" etc.   The rest of the contract deals with the details of payment.   It was found by the court below, to whom the case was submitted on the facts and law. first, that the contract referred to was executed by L. F. Tillery and E. M. Land, Agent; second, that at the time of the execution of the contract E. M. Land was authorized to sell his own undivided interest in said land, which was one-sixth of the same; third, that he had authority to contract to sell John H. Taylor's interest in the land, which was one-tenth; fourth, that at the time of the execution 'of the contract Land conracted as Agent of Taylor to sell the entire tract for $6,500.00.   The court below decreed specific performance by both Land and Taylor to the extent of their several interests.   At the time of the contract two of the defendants, Ann Land and James Taylor, were infants and Lucy Perry was a married woman, and there was no evidence that either one of the defendants except Taylor ever authorized Land to contract to sell his or her interest in the land.   The Supreme Court of North Carolina affirmed the opinion of the lower court stating in reply to the contention of appellant Land that the contract was an indivisible one "there is nothing in the case going to show that it was the pur-

pose or desire on the part of the defendant Taylor or Land that the tract should be sold as a whole. In fact Taylor's letter to his agent (Land) showed that he was only concerned in the sale of his interest and that of his brother's and sister's. While the plaintiffs in the case would not be compelled to take a part of the land if they could not get title to the whole, they could never-. theless compel either party to the contract to convey his interest in the premises." When the court came to consider the appeal of Taylor, it is stated in the opinion: "It is conceded that when one representing himself to be the owner of the *entire* estate and title contracts to sell the land, he may, at the option of the vendee be compelled to convey such interest as he has with reduction of price (quoting from Pomeroy's Specific Performance, §434). It is conceded that this case does not fall within that class. Taylor has never, at any time, or in any manner proposed or suggested that he would sell the interest of his brothers and sisters. He at all times says 'We will sell our interest.' Mr. Tillery does not in his complaint, or in any testimony suggest that he was contracting for John H. Taylor's interest. The entire correspondence negatives such a suggestion. It is the land which he wishes to buy—knowing perfectly well the condition of the title. It is true that the court will not permit the right to have specific performance evaded or denied by a mere technical or immaterial objection. It will rather look to the real, substantial terms of the contract and decree its performance with such variations as will effectuate the intention of the parties. In this case the difference between the contract as made and enforced (by the lower court) is material. There has not been the *aggregatio mentium* which is essential

to the completion of an enforcible contract.   It is difficult to cite cases directly in point, because in suits for specific performance the peculiar features of each case vary so much.   The court then cites and quotes from the two California cases, *viz*, Jackson v. Torrence, and Olsen v. Lovell, and says: "It seems to us that these two cases rest upon the correct principle," and reverses the decree compelling specific performance by Taylor.   In the above cited case of Jackson v. Torrence "the defendant together with his wife entered into a written contract to sell a hotel and furniture which belonged to them jointly.   The contract was not executed by the wife in accordance with the laws of the State.   She refused to convey.   The court below decreed specific performance by the husband.   The Supreme Court upon appeal by the husband said:   He contends that the Superior Court erred in compelling him to convey his interest in the property on receipt of its proportion of the agreed price. He says that in so decreeing the court compelled him to perform a contract which he never made or intended to make and in this position we think he is sustained by the facts above stated   *   *   *  .   The only contract he executed or intended to execute, was a contract in which his wife was to join for the conveyance of the whole property for a round sum.   Until the contract was completed by the accession of the wife there was no contract of which there could be any breach or failure to perform." In this case the court seems to have applied to the case of Land the doctrine of Mortlock v. Buller, *supra,* and in the case of Taylor to have the doctrine of Lumley v. Ravenscroft, *supra.*   Chief Justice CLARK and MONTGOMERY, J., dissent as to the case of Taylor, but write

no opinions, and DOUGLASS, J. dissented as to Land, and concurred as to Taylor, in a very strong opinion.

It is contended by the appellants, The Florida State Drainage Company *et al.*, that the cases of Clarke v. Reins, 12 Gratt. (Va.) 98, and Meek v. Walthall, 20 Ark. 648, sustains the position that they are entitled to a conveyance from John W. Henderson and wife, and from Mrs. Murphree and her husband—admitting that there can under the circumstances be no decree against Mrs. Waldo and her husband.

In the case of Clarke v. Reins, *supra,* the principle of law applied is thus stated: "The wife being one of three joint owners of the land, and they and the husband having united in the sale, though the husband and wife will not be compelled to execute the contract on their part, the other two joint owners will be compelled to convey their undivided interests upon the payment by the vendee of their shares of the purchase money." The majority opinion of the court was written by the eminent Judge Daniel, and an examination shows that while he relied on English decisions he does not recognize the distinction which is recognized by the English Court between the doctrine of Mortlock v. Butler, *supra,* and Lumley v. Ravenscroft, *supra.* He seems to be unaware of it, and bases his decision on the former case, and other like English cases. But Judge Allen, the President of the Court, in a quasi-concurring opinion, did recognize the principle that the contract was an entire one and should only be enforced so far as the vendee was concerned, as an entirety. Judge Samuels, another member of the court did not agree to the opinion.

In the case of Meek v. Walthall, *supra,* the principle which the court adopted and applied, is thus enounced:

"Where a person enters into a contract for the purchase of land from several joint owners, and files a bill in equity for specific performance of the entire contract, and fails to recover the whole of the land, because the contract was not binding upon some of the owners, this is no good reason why he should not recover the portion owned by those upon whom the contract was binding." The facts were that on the 22nd of August, 1853, John Fogle, Battice Fogle, Nancy Fogle, Francis Fogle and Jane Gillis were the owners in fee of a tract of land containing 73 acres, subject to a dower right of their mother, Sylvia Fogle; that on that day all of these parties except Jane Gillis entered into a written contract with Walthall by which they bound themselves to execute and deliver to him, on or before the 1st of January, 1854, a good and sufficient deed, with covenants of warranty, etc., for said land, for the consideration of $700.00 to be paid by Walthall on the deed being tendered. Walthall was put into possession of the land—after which Sylvia Fogle and Francis Fogle died. After this the legal title was held by the other parties in the following proportions: Battice Fogle three-sevenths, John Fogle two-sevenths, Nancy Fogle one-seventh, and Jane Gillis the remaining seventh. In 1854 these parties, or most of them, conveyed the land to Meek, who purchased with notice of the contract with Walthall, and he dispossessed Walthall. On bill for specific performance, the court found that the contract could not be enforced against Nancy Fogle, who was an infant when she signed it, nor against Gillis and wife because they were not bound by the contract. The court enforced the contract against Battice Fogle and John Fogle. This case fairly sustains the contention of the appellants. But when we examine the

opinion we find that no opinion of any court is referred to as supporting this portion of it.

The case of Goring v. Nash, 3 Atk. 186 is referred to as being cited by appellant. This was a case decided by Lord Hardwicke, involving marriage settlement articles, and Lord Hardwicke said: "There is no instance of decreeing a partial performance of articles, the court may decree all or none." Again he said: "Nobody can tell what it is that parties who are dead have laid the greatest weight upon, in coming to agreements, and therefore it would be attended with bad consequences if agreements were to be split and one part to be decreed and not another." The Arkansas court held that this case did not apply to the case before them. The general doctrines in England with reference to the enforcement of joint contracts for the sale or lease of land, is not referred to and seems to have been unknown to the court. See the general discussion of this subject in White & Tudor's Leading Cases in Equity, Vol. 2, part 2, pp. 1069 to 1072 inclusive.

While negotiations were pending between Capt. R. E. Rose and John W. Henderson which resulted in the contract sought to be enforced, the following letter was written by John W. Henderson to R. E. Rose;

"John W. Henderson,
    Attorney-at-Law,
Tallahassee, Florida.

                                Tallahassee, Fla., Aug. 10th, 1908
R. E. Rose, Esq.,
        Tallahassee, Florida.
Dear Sir:
  I have your letter of the 31st ult. containing your offer of $50,000.00 for the Everglade lands owned by my

two sisters and myself, heirs of the late John A. Henderson, same being located in the counties of Lee and DeSoto and containing 94,591 acres more or less.

Personally I would be willing to accept this price for these lands and upon the terms as stated in your letter—$25,000 in cash and the balance in one year with six per cent interest. I think that I am further authorized to say that Mrs. Murphree, one of my sisters, would be satisfied with this offer. Neither of us, however, can accept your proposition without the concurrence of all interested. If you are in a position to hold this offer open for a few days, and until we can confer with Mrs. Waldo, I will then be able to give you a final answer. I shall advise that your offer be accepted.

> With regards, I am
>
> Yours truly,
>
> JOHN W. HENDERSON."

This letter shows conclusively that John W. Henderson was not disposed to make a contract to sell his interest separate from that of his sisters. There is nothing in the contract of 2nd of October, 1908, between the Henderson heirs and Capt. Rose which indicates such a purpose. It does not appear that John W. Henderson or either of his sisters were guilty of any fraud, misrepresentation or concealment in the making of said contract. It seems to us, therefore, the weight of reason and authority is against the specific enforcement of said contract against John W. Henderson alone, or against him and Mr. and Mrs. Murphree to the exclusion of Mr. and Mrs. Waldo. The contract was for the sale of the entire interest of the three Henderson heirs, and we do not think a court of equity has any authority to enforce a contract different from the one the parties

themselves made, in the absence of fraud, misrepresentation or concealment.

. In this connection it is proper and just to say that the charge of concealment and fraud made in the brief of the Henderson heirs against R. E. Rose and his associates N. B. Broward and W. S. Jennings in the making of this contract, is in our opinion without foundation. It is charged in the answer of A. A. Murphree and wife that there was fraud in securing the execution and acknowledgment of the contract by them. No fraud is shown in that connection. It is asserted that Rose, Broward and Jennings knew at the time the contract was made that a contract had been made with Bolles by the Internal Improvement Board for the drainage of the Everglade lands, near the lands of the Henderson heirs, which greatly enhanced the value of these lands and that they concealed this fact from the Henderson heirs. This charge is not supported by proof. The contract was made with Bolles subsequent to the agreement with the Henderson heirs. Every intelligent person in Florida knew, or ought to have known that four years before this contract was made Governor Broward had been elected Governor on a platform pledging his administration to the drainage of the Everglade lands. He had flooded the State with documents showing the feasibility of the drainage project, and with statements of their great value when drained. Against powerful opposition to his scheme he was elected Governor. The Legislature which met soon after his inauguration took up his scheme and passed additional laws empowering and authorizing the Trustees of the Internal Improvement Fund, of which he was ex-officio a member, to enter upon the project. They were given all necessary power to contract for drainage,

and as it might be necessary, to sell the overflowed lands. The Board promptly took up the scheme, made plans and contracts, built dredges and entered practically upon the work.   This had been going on for nearly four years when this contract was made.   A large number of newspapers were opposed to it.   It was considered by them as impracticable and unnecessary.   All well informed people knew what was being done.   Of course the violent opposition which was met with tended to lower the market value of the overflowed lands.   But neither Broward nor Jennings nor Rose was responsible for this condition of things.   Under these circumstances the price offered by Rose was considered by the Henderson heirs as the market value of the lands, and no good reason can be perceived why it is wrong for Rose and his associates to buy the lands of private parties if the latter were willing to sell.

There is a contention by the appellants that Mrs. Henderson, Mrs. Murphree and Mrs. Waldo are estopped from making the defense that the agreement with Rose and associates was not properly acknowledged by them by the terms of their sworn answer to the original bill, because as it is contended, they admitted in their said answer that they executed said agreement with Rose and that means that they properly acknowledged it.   If the doctrine of estoppel as thus invoked could be applied to married women, an examination of their answer shows that the only admission they made was that they executed the agreement with Rose as appears by reference to said agreement made a part of their answer, and it appears by the said agreement that it was not properly acknowl-

edged by them.   Another contention of appellants is that the court should not assume that the married women will refuse to execute a deed to the appellants inasmuch as they have not pleaded and proved their unwillingness so to do.   The case of Campbell v. Beard, 57 W. Va. 501, 50 S. E. Rep. 747, is relied on.   It seems to us that the married women have by their answer shown their unwillingness to execute the deed to appellant, by pleading the defect in the agreement as a reason why they should not be compelled to execute it.   It also seems to us that the facts in the West Virginia case referred to are totally unlike the facts in the instant case.   In that case the contract was made by the husband alone as to his own lands, and it does not affirmatively appear that the wife was a party to the suit.   For a recent discussion of the general doctrine of Specific Performance, see the notes to the case of Roquemore & Hall v. Mitchell Bros., 140 Am. St. Rep. p. 55.

We have dealt with the principal and controlling questions presented by the record, and think that the Circuit Judge did not err in dismissing the cross-bill; but in affirming his decree we do so without prejudice to any suit at law for damages which appellants may have against such of the parties to the contract with Rose and his associates dated October 2nd, 1908, as were legally competent to contract.

WHITFIELD, C. J., TAYLOR and SHACKLEFORD, J. J.. concur;

COCKRELL, J., dissents.