123 So.2d 267 (1960)
Walter T. SHIRLEY, Appellant,
v.
LAKE BUTLER CORPORATION, A.B.E. Options, Inc., Twenty-Two Thirty-Six Corporation and Prudential Land Company, corporations, Appellees.
No. 1629.
District Court of Appeal of Florida. Second District.
August 24, 1960.
Rehearing Denied October 3, 1960.
*268 Steed, Steed & Urban, Orlando, for appellant.
James G. Pace, Miami, and Warren H. Edwards, Orlando, for Lake Butler Corp.
Hansford D. Tyler, Jr., Miami, for Twenty-Two Thirty-Six Corporation.
Maguire, Voorhis & Wells, Orlando, for A.B.E. Options, Inc., and Prudential Land Co.
BARNS, PAUL D., Associate Judge.
Appellant-plaintiff brought suit against appellees seeking a decree for the specific performance of a contract to sell land. After the close of all pleadings and after the time for taking testimony had expired, one of the appellees moved for a summary decree and another moved for a judgment on the pleadings (bill and answer). The summary decree motion was granted and the complaint dismissed as to all defendants. Thereupon plaintiff appealed. We affirm the decree denying specific performance, but remand for further proceedings.

Statement of the Case
For purposes of brevity, the persons and corporations involved in the lower court litigation will be referred to as follows: Walter T. Shirley as "Shirley"; Frederick H. Kury as "Kury"; The Lake Butler Corporation as "Lake Bulter"; A.B.E. Options, Inc. as "A.B.E.".
On April 17, 1956, prior to the date of the contract sued upon, one Kury procured a 10-day option to purchase some 4,000 acres of land from Lake Butler and A.B.E. for some $240,000. Kury was the agent of Kelley E. George for such purpose. The consideration for the option was $1,000 furnished by George. Upon procurement of the option Kury promptly assigned it to George.
On April 23, 1956 when George was about to exercise the option a novation occurred between the vendors and the vendee George, as a result of which the vendors agreed to sell to the vendee George some 5,800 acres for an amount in excess of $400,000, with $40,000 being paid as a down payment. This contract superseded the option.
On the day of the execution of the foregoing contract George entered into a contract with appellant Shirley for the sale to him of the 5,800 acres at a sale price in excess of $1,000,000 Shirley making a down payment of $40,000 which fund was used by George for his down payment to Lake Butler and A.B.E. on the $400,000 contract.
Kury was a broker acting only as the agent of Lake Butler and A.B.E., except when he acted for George in procuring the original 10-day option; and the contract to George as vendee provided for the payment to Kury of a 10% commission by the vendors at time of closing.
*269 The vendors delivered abstracts to most of the land to Kury on April 23, 1956, and Kury delivered them to the abstract company on April 26, 1956. They were completed for delivery September 3, 1956. The abstracts were never delivered to George or Shirley.
The inability to get the abstracts continued to date stagnated all progress toward closing. On July 7, 1956, A.B.E. notified George that it was terminating their contract and Lake Butler notified George it was terminating the contract as of August 14, 1956. Both letters of cancellation referred to the terms of the option specifying that Kury, the optionee, was to bring the abstracts to date in event of its exercise. Both letters referred to the expiration of the 60 days time for closing and the non-payment of the 29% of the purchase price.
Litigation between Shirley and George ensued which was settled on August 7, 1957 by George assigning to Shirley his $400,000 contract whereupon Shirley instituted this action for specific performance on the assigned contract, which suit was brought more than a year after it had been repudiated by Lake Butler and A.B.E.
One, if not the principal point in controversy, is over the delivery of the abstracts. The option to Kury provided in event of the exercise of the option, in reference to the closing agreement, that:
"The said agreement shall provide the furnishing of abstracts to the property not up to date to be brought down to date at the expense of the above corporations, by Frederick H. Kury, and shall provide for the closing of the said transaction within thirty (30) days of the delivery of the said abstracts.
* * * * * *
"The abstracts, when brought down to date, shall show a good and marketable title, but in the event shall not be found good and marketable, the seller agrees to use reasonable diligence to make the said title good and marketable, and shall have a reasonable time to do so; and if, after reasonable diligence on their part, the said title shall not be found good and marketable within a reasonable time, the purchaser shall have the following options, which shall be made in writing at the time objections are made to the said title:
"1. The seller is to return the Twenty-four thousand, six hundred and nintey-three and 36/100 Dollars ($24,693.36) upon surrender of said contract.
"2. At the request of the purchaser they shall deliver the title in its existing condition.
"3. He shall have the option to reject the title to any portion of the property lying contiguous not to exceed five per cent (5%) of the total acreage, and the price shall be reduced accordingly."
The novated contract for the sale of the 5,800 acres between Lake Butler and A.B.E. as vendors and George as vendee did not contain the clause of the option first above quoted relating to the abstracts to be delivered "not up to date" and "to be brought down to date" at the expense of the vendors "by Frederick H. Kury," but provided:
"It is agreed that this transaction shall be closed, and the purchasers shall pay the balance of the 29% and execute all necessary papers within sixty (60) days from delivery or tender to him of an abstract covering said property, otherwise the sum paid this day shall be retained by the seller as liquidated damages."
* * * * * *
"The seller is to furnish an abstract showing his title to be good and marketable and/or insurable, but in the event that the title shall not be found good and marketable, the seller agrees to use reasonable diligence to make the *270 said title good and marketable and shall have a reasonable time to do so, and if after reasonable diligence on his part said title shall not be made good and marketable within a reasonable time, the seller shall return the money this day paid and all moneys that may have been paid to him under this contract, and thereupon he shall be released from all obligations hereunder. Or, upon request of the purchaser, he shall deliver the title in its existing condition.
"Provided, however, that if five per cent (5%) or less of the property shall not meet title requirements the purchaser shall take "as is" or exclude such per cent as is not acceptable as to title and the price shall be adjusted accordingly, and this agreement shall not be otherwise effected."

Conclusion
The plaintiff  appellant Shirley, the assignee of George, took the contract subject to all defenses available against George and his rights are no greater than were the rights of George. One must be active in the assertion of a claim for specific performance of a contract for the sale of land. Hathcock v. Societe Anonyme La Floridienne, 54 Fla. 631, 45 So. 481. Where a party is not reasonably diligent in seeking to enforce the contract for the sale of land, the delay may render it inequitable to enforce the claim. Nobles v. L'Engle, 61 Fla. 696, 55 So. 839.
The notice of termination of the contract by the vendors occurred in July and August 1956 and the vendors thereupon proceeded to sell many of the parcels to others. This action was not commenced until September 1957. The final decree was rendered in September 1959. The Court takes judicial notice that between the date of the contract and the date of the final decree land values in that area had increased substantially.
The above quoted provision of the subject contract specifying that the sellers were to furnish the buyer an abstract was an independent covenant of the sellers. Unless waived, the performance of this covenant was a condition precedent to the commencement of the running of the 60 days allowed for closing. The abstracts were delivered to Kury but he was not the agent of George, the vendee. No abstracts were delivered to George or his assignee, the plaintiff.
The law applicable under these circumstances where the vendee lacks possession appears to have been well stated in the case of De Huy v. Osborne, 96 Fla. 435, 118 So. 161, 163, as follows:
"It is true the vendors became in default in not tendering a marketable title of record. At no time thereafter were the vendors entitled to have the contract specifically enforced, because the courts will not require the performance of a contract at the instance of a plaintiff who has not performed, or who is not able to substantially perform, on his part, unless such default be waived. Therefore these vendors could not under the circumstances, by giving notice, place the purchaser in default as a basis for equitable relief upon complaint of the vendors. Nevertheless, it is the duty of a purchaser who is not in possession, if he would invoke the aid of a court of equity, when he is put upon notice that the vendor cannot or will not deliver a good title as he contracted to do, to elect with reasonable promptness whether he will seek by suit for specific performance the conveyance of such title as the latter can convey, with abatement in the purchase price where appropriate, or whether he will resort to an action at law for his damages for breach of the contract, or whether, on the other hand, he will exercise his right to consider the contract abandoned. Where the *271 purchaser neglects for an unreasonable time under all the circumstances, without sufficient explanation, to elect and act upon his equitable remedy, his right to specific performance may be barred by his own laches, notwithstanding the original default of the vendor, and although time is not of the essence. The purchaser is not put in default under his contract because he did not offer to perform when the vendor was himself in default, but he is barred from equitable relief because he unreasonably delayed under all the circumstances in asserting his equitable rights after notice that it would be necessary for him to act. What has just been said with reference to the vigilance required of the purchaser under these circumstances is particularly applicable when a change in the status or value of the property has occurred during the intervening delay, or the value of the property is fluctuating and the delay enables the purchaser to speculate thereon. Knox v. Spratt, 23 Fla. 64, 6 So. 924; Hathcock v. Societie, etc., 54 Fla. 631, 45 So. 481. The ground upon which an unreasonable and unexplained delay in this class of cases is condemned by courts of equity is that such delay raises a presumption that the dilatory party has abandoned his contract. Chabot v. Winter Park Co., 34 Fla. 258, 269, 15 So. 756, 759, 43 Am.St.Rep. 192; Knox v. Spratt, supra. When such party fails to take action to enforce his equitable rights within a reasonable time under all the circumstances after he is on notice that the other party will not perform, such failure would ordinarily indicate that the dilatory party is thereafter in fact exercising his option to consider the contract abandoned by reason of the default or rescission of the other party.
* * * * * *
"For the reasons already stated, the decree dismissing the purchaser's bill does not permit the vendor defendants to take advantage of their own default. Nor does it deny the purchaser relief because he did not tender performance on his part while the vendors were themselves in default. It withholds equitable relief from the purchaser on account of his failure to assert his equitable rights within a reasonable time under all the circumstances, after having knowledge that he must elect his remedy and act.
* * * * * *
"The question of laches turns not merely upon the lapse of time, but also upon the nature and evidence of the rights involved and other relative circumstances occurring during the lapse of time. Geter v. Simmons, 57 Fla. 423, 49 So. 131; Norton v. Jones, 83 Fla. 81, 90 So. 854. See, also, Freed v. Miami Beach Pier Corp., 93 Fla. 888, 112 So. 841, 52 A.L.R. 1177. In specific performance, no general rule applicable to all cases as to what will and what will not constitute laches can well be formulated. The existence or absence of laches must depend upon the facts, or what is commonly referred to as the `equities,' under all the circumstances involved, as specified performance is not a matter of strict right, but rests within the sound discretion of the court, a discretion, however, which is not to be exercised capriciously or arbitrarily, but according to established principles of equity as applied to the particular facts involved. Rose v. Henderson, 63 Fla. 564, 59 So. 138; McCrillis v. Copp, 31 Fla. 100, 12 So. 643; McCaskill v. Dekle, 88 Fla. 285, 102 So. 252."
The facts above stated appear to be without substantial contradiction and when the foregoing principles of law are applied to the facts it appears that the plaintiff has been guilty of laches to the detriment of defendants. There appears to be no genuine issue of fact to be tried in respect to specific *272 performance and the Chancellor did not err in denying this relief.
After some despositions had been taken and some interrogatories had been propounded and answered and after the time for taking testimony had expired, the plaintiff noticed the defendant of a hearing on a motion for leave to file an amended complaint. The tendered amended complaint adopted by reference the allegations of the original complaint and alleged other facts germane to original complaint upon which he sought rescission, in the alternative. The proposed amended complaint amounted to little more than an amendment to the prayer for relief, seeking rescission in the alternative.
Florida Rules of Civil Procedure, Rule 1.8(b), 30 F.S.A., prescribes that "Every complaint shall be considered to pray for general relief." This provision corresponds with Federal Rules of Civil Procedure, Rule 54(c), 28 U.S.C.A., which provides: "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." The meaning and intent of both rules seems to be substantially the same. An amendment of the prayer for relief is not necessary to obtain the substantive relief to which the claimant is entitled to under the pleadings and proof. See 6 Moore's Federal Practice, 2nd ed. sec. 54.62.
As stated by Fletcher's Equity Pleading and Practice, 109-111:
"Yet it [prayer for special relief] is not absolutely essential to the validity of the bill, as under the prayer for general relief the complainant may claim at the hearing a particular relief. As has been said by a learned authority, `lest the case should present in evidence a new aspect, or the court should differ with him as to the appropriate relief, the complainant prays for "such other and further relief as may be adapted to the nature of the case, and agreeable to equity and good conscience."'
* * * * * *
"Usually, a prayer for general relief, without a special prayer of the particular relief to which the complainant thinks he is entitled, will be sufficient, and the particular relief which the case requires may at the hearing be prayed at the bar."
And in Cook v. Martyn, 2 Atk. 3 according to footnote 2 of Story on Equity Pleading § 41, Lord Hardwicke is reported to have said "Mr. Robins, a very eminent counsel, used to say, general relief was the best prayer next to the Lord's Prayer."
Construing the complaint as containing a prayer for general relief according to the rule and that the Chancellor could at final hearing grant such relief as was sought to be specially prayed for in the alternative, we find no harmful error in not granting plaintiff motion for leave to file an amended complaint.
The subject contract provided:
"This contract shall be binding upon both parties, the seller and the purchaser, their heirs, executors or assigns, when approved by the owner of the property above described." (Italics supplied.)
Of course the contract would not be binding on the parties or their heirs, executors or assigns unless the contract was approved by the sellers by execution thereof. The words do not relate to the "owner" approving an assignment, but relate to the owner approving the contract. These words did not require the sellers to approve the assignment in order to make the assignment from George to Shirley effective.
The decree appealed from is affirmed to the extent that specific performance was denied, but said cause is remanded and upon remand it is directed that further proceedings be had not inconsistent herewith, *273 without the necessity of the pleadings being amended, for the determination by the Chancellor, after a full and complete hearing including the taking of such further proofs as may be adduced, as to whether the plaintiff is entitled to the return of the $40,000 deposit in accordance with sound principles of law and equity, and for the entry of an appropriate final decree accordingly.
KANNER, Acting C.J., and SHANNON, J., concur.