[Civ. No. 1739.    Third Appellate District.—December 28, 1917.]

## T. W. POTTER, Respondent, v. HENRY C. SPAULDING, Defendant; UNITED STATES LAND COMPANY (a Corporation), Appellant.

VENDOR AND PURCHASER—FORECLOSURE OF CONTRACTS OF SALE—UN-WARRANTED JUDGMENT AS TO WIFE OF VENDOR.—Where in an action by a vendor for money damages and a strict foreclosure of contracts for the sale of land, with the right to retain the moneys paid on account of the purchase price, the wife of the vendor is not made a party to the action and under no obligation to convey her one-fourth interest in the land, the part of the judgment directing the vendee to pay three-fourths of the contract price and take a three-fourths interest in the property should the wife refuse to sign the deed with her husband is improper, the husband having contracted to sell all the property and not a three-fourths interest therein.

APPEAL from a judgment of the Superior Court of Tulare County. J. A. Allen, Judge.

The facts are stated in the opinion of the court.

Lamberson, Burke & Lamberson, and Snook & Church, for Appellant.

T. E. Clark, and Alfred Daggett, for Respondent.

CHIPMAN, P. J.—This action grows out of two separate contracts entered into by plaintiff and by Henry C. Spaulding, defendant, and W. R. Pigg. The action was essentially on the equity side of the court and was tried by the court without a jury. Defendant United States Land Company appeals from the judgment herein on bill of exceptions. In the same action, the transcript of which is entitled Sacramento No. 2423, Civil No. 1728, *Potter* v. *Pigg, post,* p. 707, [170 Pac. 1066], the plaintiff Potter appeals from the judgment and from certain orders made after final judgment. This latter appeal will be treated in a separate opinion.

The first of the contracts above referred to was entered into on December 8, 1911, by which plaintiff, the party of the first part, agreed to sell to said Pigg and Spaulding, the parties of the second part, certain land in said agreement described

in consideration of certain payments to be made to plaintiff
and certain covenants therein set forth to be performed by
said Pigg and Spaulding, the money payments to be as fol-
lows: "$1000.00 which has been deposited by the parties of
the second part in the Citizens Bank at Visalia, California, to
the credit of the party of the first part and which is to be
paid over to the party of the first part as hereinabove pro-
vided"; $26,125 to be paid on delivery of the deed mentioned
in the agreement, and balance, twenty thousand dollars, on or
before one year from the date of the agreement, to be secured
by mortgage on the said land. It was provided by the agree-
ment that first party should furnish to second parties, by
delivering the same to the Citizens' Bank of Visalia, a com-
plete abstract of title to said land as soon as practicable,
second parties to have thirty days from the receipt of the
abstract within which to examine the same and point out any
defects therein, which latter, when pointed out, first party
agreed to cure "as soon as practicable thereafter"; second
parties agreed to accept the property within thirty days from
delivery of abstract if title was clear and merchantable, "but
if not so free, as soon thereafter as said clouds are removed
and said defects cured by said first party"; unless the second
parties should specify defects in the title within thirty days
after receipt of the abstract by said bank, "title to said prop-
erty should be deemed to have been accepted by them"; on
the receipt of one thousand dollars deposited with said Citi-
zens' Bank of Visalia, and the further sum of $26,125 and
the execution of the mortgage referred to securing the pay-
ment of twenty thousand dollars, first party was concurrently
therewith to execute and deliver to second parties a good
and sufficient deed to all the said land, "free and clear of
liens and encumbrances of every kind and character"; all
acts and things to be performed by the parties to the agree-
ment "shall be done with the utmost practicable expedition";
in case of default on the part of second parties in any of
the terms of the agreement, it was provided that the bank
should forthwith pay to first party the said sum of one thou-
sand dollars, "the same being the consideration moving to
him for entering into this agreement." It was further pro-
vided that certain personal property described in the agree-
ment, now on the land, "shall pass and be conveyed by the
party of the first part to the parties of the second part by

separate bill of sale and without any additional consideration at the time he grants and conveys said land to said parties of the second part."

On January 15, 1912, the parties to the original contract entered into a supplemental agreement in which it was recited that the first party had furnished second parties abstracts of title showing certain defects therein as pointed out by second parties, and in consideration thereof and the covenants in said supplemental contract contained it was further agreed that Power & McFadzean, attorneys at law, should proceed at once to cure any defects in the title to said property and put the same in merchantable condition at the expense of first party; that second parties shall advance to first party eleven thousand dollars, to be used by him to procure from one Ed. Mort a release of all his claims upon said land and the personal property thereon referred to in the contract of December 8, 1911, "which said sum of eleven thousand dollars shall be credited to said parties of the second part as a payment on the purchase price of said land"; first party was to give second parties immediate possession of the land and personal property; should first party be unable to cure the title to said property within a reasonable time, "he shall repay said parties of the second part said sum of eleven thousand dollars by causing to be conveyed to them 220 acres of land to be selected by them from any portion of the land hereinbefore mentioned and specifically described in said agreement of December 8, 1911, together with said personal property." Neither the deed nor the mortgage mentioned in the original contract to be delivered until title to the land was put in good and merchantable condition, and interest on the balance over and above said eleven thousand dollars was not to commence until said title is in a merchantable condition and said deed and mortgage delivered as aforesaid. Said eleven thousand dollars was to be applied upon the purchase price of said land, and it was provided that this supplemental agreement of January 15th was to be a supplement to the agreement of December 8, 1911, which latter "shall remain in full force and effect as modified by this supplemental agreement."

On February 7, 1912, as found by the court, Pigg and Spaulding assigned and transferred all their right to and interest in the aforesaid contracts and to all said personal

property to defendant, United States Land Company, of which defendant Spaulding was president and general manager. By the terms of the assignment, the assignee expressly assumed the burdens and obligations of said contracts, and thereafter Pigg and Spaulding ceased to have any interest therein. The action was dismissed as to Pigg, and Spaulding in his answer disclaimed any interest in said contracts. The plaintiff alleged full performance of each and all of the covenants set forth in the said contracts to be by him performed and the failure of defendants to keep or perform the covenants undertaken by them to be performed. Defendant United States Land Company answered, alleging full performance of the covenants of said contracts upon the part of Pigg and Spaulding agreed by them to be performed and on its own part as assignee of the interest of said Pigg and Spaulding. It also filed a cross-complaint seeking certain relief.

The court made the following findings of fact and conclusions of law:

(1) That plaintiff is not the owner in fee of the property described in the complaint, but is the owner in fee of an undivided three-fourths thereof, and Epsie G. Potter is the owner in fee of the other undivided one-fourth of said property. That their said ownership in fee is subject to the following easements, to wit: 1. A right of way of a certain named railway company, "which right of way did not constitute an objection or defect in the title because excepted by the contract." 2. A right of way for a pipe-line and telephone line of the Standard Oil Company. 3. A right of way to the San Joaquin Light and Power Company for an electric pole line. 4. A right of way for a levee one hundred feet wide across certain sections designated in the findings. That on December 8, 1911, plaintiff and said Pigg and Spaulding entered into the agreement of date December 8, 1911, referred to in the pleadings.

(2) That said W. R. Pigg and Henry C. Spaulding have not, nor has either of them, ever deposited in the Citizens' Bank of Visalia, or in any other bank or place, to the credit of plaintiff or to be paid to him the first payment of one thousand dollars, mentioned and provided for in said contract, nor has defendant, said Land Company, so deposited said money, nor have said defendants, or any or either of

them, ever paid or offered to pay the said plaintiff said sum or any part thereof.

(3) Plaintiff furnished and delivered to said W. R. Pigg and Henry C. Spaulding a complete abstract of title to said real property as required by and within the time provided in said contract.

(4) That said defendants, W. R. Pigg and Henry C. Spaulding, employed attorneys Power and McFadzean to examine said abstract and to determine therefrom the title to said land; that they did, within thirty days after said abstract had been furnished by plaintiff, report in writing the result of their said examination to plaintiff and to said W. R. Pigg and Henry C. Spaulding, and therein pointed out all the defects in said title shown in said abstract, ''except that said attorneys did not specify or point out that said title was subject to a right of way for a levee one hundred feet wide across said section 29,'' as above referred to.

(5) That thereafter and on or about January 15, 1912, plaintiff and defendants W. R. Pigg and Henry C. Spaulding entered into a supplemental agreement. referred to in the pleadings, ''and at the same time plaintiff executed to W. R. Pigg and Henry C. Spaulding a bill of sale, transferring to them the title to and ownership of the personal property described in the contract of December 8, 1911, aforesaid, and they immediately entered into possession of said lands and personal property and remained in possession thereof until February 7, 1912; then said United States Land Company entered into possession thereof and remained in possession until May 22, 1913.'' That said Pigg and Spaulding, while they remained in possession of said property as aforesaid, appropriated to their use the rents, issues, and profits thereof, as also did the United States Land Company, while it remained in possession thereof.

(6) That on February 7, 1912, the said Pigg and Spaulding duly assigned and transferred to the said Land Company all their right, title, and interest to the real and personal property above described, and all their right, title, and interest in the said contracts.

(7) That upon the execution of said supplemental agreement, said Pigg and Spaulding paid to plaintiff, Potter, the sum of eleven thousand dollars mentioned in said supplemental agreement, and said Potter used the same to obtain

from one Ed. Mort a release of certain claims he had in and to the real property above described.

(8) That said plaintiff, immediately upon the execution of said supplemental contract, employed Power and McFadzean to cure the defects in and remove the clouds from the title to said real property; that said attorneys proceeded diligently to cure said defects, "and did cure said defects and remove said clouds, and completed said work on or about March 15, 1913, and thereupon notified plaintiff and said W. R. Pigg and Henry C. Spaulding in writing that the title to said real property was free and clear from clouds and defects and was good and merchantable; that no other abstract of title to said land was furnished by plaintiff to said defendants or either of them, except that after the commencement of this action plaintiff furnished to defendants a continuance of said abstract, which continuance included all matters of record affecting said title from the date of the original abstract to a date after said title had been made good as aforesaid; that all work of said attorneys in removing said clouds and curing said defects were done as soon as practicable and within a reasonable time, and with due diligence.''

(9) That prior to entering into said original agreement, said Pigg and Spaulding "entered upon and examined the lands above described and saw the said pipe-line and telephone line of the Standard Oil Company, and the pole and electric line of the San Joaquin Light and Power Company, extending across said lands on the respective rights of way of said companies, and the levee across said section 29 on the right of way therefor above mentioned; said pipe and telephone lines, and said pole and electric line, and said levee were then objects plainly visible, and were then known by said W. R. Pigg and Henry C. Spaulding to have been constructed on said lands; they made no objection thereto, or to the title to said lands on account thereof, but waived any and all objections thereto.''

(10) That after plaintiff had been notified by said attorneys that the clouds upon and defects in the title to said lands had been cured and removed, and between the fifteenth and twenty-fourth days of March, 1913, plaintiff informed the said Spaulding, then president of said Land Company, that plaintiff wanted the deal closed, and that a deed conveying the said lands to W. R. Pigg and Henry C. Spaulding

had been made and placed in escrow in the Citizens' Bank of Visalia; that said Spaulding replied that he had not the money, and asked for further time in which to get the money required to complete the second payment on said land, to which plaintiff did not consent or agree. "Said deed was and is a grant deed made by plaintiff and his wife, Epsie G. Potter, to W. R. Pigg and Henry C. Spaulding, conveying to them the lands above described; it was deposited in said bank in the latter part of December, 1911, by said attorneys for plaintiff at his request, being handed by said attorneys to W. R. Pigg, who was then cashier of said bank, and it remained in said bank in escrow until about May 23, 1913." That at the same time plaintiff instructed said Pigg in writing that said deed be delivered to said Pigg and Spaulding on their payment to said bank of the sum of $26,125, mentioned in the original agreement, and the execution by them to said Potter and wife of the mortgage for twenty thousand dollars, mentioned in said agreement, and at said time the said Spaulding was president of said Land Company; that neither he nor any officer or agent of the said company ever examined said deed, nor did Spaulding or any of said defendants ever make any objection to said deed or to the form thereof.

(11) That at the time of entering into said original agreement it was understood and agreed by the parties thereto that said Citizens' Bank of Visalia should receive the deed conveying said lands from plaintiff to W. R. Pigg and Henry C. Spaulding and should deliver said deed to them on receiving from them the second payment and the mortgage mentioned in said agreement, "provided the one thousand dollars mentioned in said agreement had been paid, and said deed was in said bank ready for delivery to them at any time they complied with said agreement on their part, from the time it was placed in said bank until May 14, 1913."

(12) That on May 14, 1913, plaintiff served a notice and demand in writing upon said Spaulding, a copy of which notice is set out in the findings and is directed to W. R. Pigg and Henry C. Spaulding. It calls attention to the contracts entered into by the parties and the provisions thereof, and states that whereas the said Pigg and Spaulding, the parties of the second part, have wholly failed to comply with the terms of said contracts, the notice proceeds: "Therefore, I

declare the said agreement so far as the same relates to any obligation on my part to perform, abrogated, annulled, and canceled; and you are hereby further notified that demand is now made that you vacate and deliver up the possession of the said premises to the undersigned, or my authorized agent, together with all the personal property mentioned and described in the original agreement aforesaid, within thirty days from the date of the service on you of this notice." It is further found by the court "that plaintiff did not rescind the agreements or either of them."

(13) That on May 22, 1913, plaintiff entered upon and obtained peaceable possession of said lands and of the greater part of said personal property, but not with the consent of defendants, or either or any of them, "and has ever since remained and now is in possession of said lands and the rents, issues, and profits thereof; that on the day last aforesaid and after taking possession of said personal property, he delivered possession of said personal property to said Henry C. Spaulding, who was then president of said United States Land Company, and said company has ever since retained the same and appropriated it to said company's use."

(14) That on May 24, 1913, the said defendant Land Company served upon plaintiff a notice and demand in writing in which attention was called to the execution of said contracts and the provisions thereof, and stating that said plaintiff had not, within a reasonable time or at all, cured the title to said property nor put the same in a good and merchantable condition, and have not as yet done so, and called attention to the assignment of said contracts to said Land Company. The notice proceeds: "Now, therefore, the said United States Land Company, as such assignee, as aforesaid, has elected to select said 220 acres of land and said personal property in lieu of the further performance by you of the terms and obligations of said contract, as aforesaid, and has selected the south 220 acres of said tract of land agreed to be conveyed by you, as is more fully set out and described in said contracts as aforesaid, and hereby demands of and from you, the conveyance to it, the said corporation, of the said south 220 acres of said tract of land, as aforesaid, and a bill of sale of all said personal property mentioned in said original agreement." It is found by the court that the plaintiff has re-

fused "to comply with, and has not complied with, said demand in any manner or at all."

(15) "That defendants were entitled to a reasonable time in which to comply with the terms of said agreements on their part after notice was given to them as aforesaid by plaintiff; that said reasonable time had expired on May 13, 1913, and prior to the time plaintiff notified W. R. Pigg and Henry C. Spaulding that his obligations under said contracts were annulled and canceled as aforesaid; that said defendants have not, nor has either of them, ever been ready or able to make the payments specified in said original contract, nor have they or either of them ever paid any part of the purchase price of said property except the said sum of eleven thousand dollars paid at the time of the execution of said supplemental agreement; that plaintiff has not repaid to defendants, or either of them, any part of said eleven thousand dollars."

(16) "That plaintiff was always ready, able, and willing to comply with the terms of said contracts on his part, up to the time he gave the notice and demand aforesaid, upon the performance by defendants of the terms of said contracts on their part."

(17) That defendants have not, nor has either of them, been damaged in any sum whatever by plaintiff's failure to convey to them, or either of them, the 220 acres of land hereinbefore mentioned, nor by his failure to repay to them, or either of them, the said sum of eleven thousand dollars, nor by any other act, failure, or omission of plaintiff.

(18) "That plaintiff herein has suffered no damage because of the defendants, or any of them, being in possession of, or having the use of, the real and personal property described in said contracts."

(19) That neither of said defendants ever notified or stated to plaintiff prior to the written notice and demand of May 24, 1913, that plaintiff was in default in the performance of the terms of said contract; that said Land Company did demand on October 15, 1912, "the conveyance to it of 220 acres off the south end of said tract of lands, and plaintiff refused to comply with said demand; that plaintiff was not then in default and has never been in default in the performance of any of the terms of said contract on his part."

(20) That the reasonable value of said 220 acres of land

and said personal property was on January 15, 1912, the sum of eleven thousand dollars.

(21) "That plaintiff herein has not been damaged by the act or acts or failure to act of defendants or any of them in any amount whatever."

(22) "All sums of money agreed to be paid on the two contracts should have been paid within a reasonable term, to wit, prior to May 14, 1913."

As conclusions of law, the court found as follows:

"That there is due and unpaid upon said contracts the sum of $36,125 for purchase money, with interest thereon from March 24, 1913, at seven per cent per annum, provided plaintiff and his wife, Epsie G. Potter, execute to United States Land Company, as herein after provided, a good and sufficient deed conveying to said company the lands described in said contract and in said complaint; that in the event said Epsie G. Potter should refuse to execute said deed or join in the execution thereof, then there is due and owing on said contracts the sum of $24,343.75 for purchase money of an undivided three-fourths interest in said lands, with interest thereon at seven per cent per annum from March 24, 1913."

"That plaintiff is entitled to the judgment of this court that all the rights of the defendants Henry C. Spaulding and said United States Land Company, and of each of them, in and to the said contracts, and each of said contracts, and in and to the lands described in said original contract and in the complaint herein, be foreclosed, and that plaintiff recover from the defendants Henry C. Spaulding and United States Land Company his costs in this action."

"That defendant United States Land Company should be allowed a reasonable time after date of the judgment herein in which to complete the payment of all sums of money due and owing on said contracts, and said reasonable time is hereby fixed at sixty days after date of said judgment."

"That on the payment by said United States Land Company at any time within sixty days from the date of the judgment herein of the sum of $36,125, with interest thereon at the rate of seven per cent per annum from March 24, 1913, together with plaintiff's costs in this action, the plaintiff and his wife, Epsie G. Potter, should execute to said United States Land Company a good and sufficient deed conveying to said company the lands described in said original contract, sub-

jcct to the easements mentioned in the foregoing findings; and should deliver to said company possession of said lands.''

"In the event said Epsie G. Potter fails or refuses to execute a deed or join in the execution of a good and sufficient deed, as above provided, with plaintiff, to said United States Land Company, then on the payment by said United States Land Company to said plaintiff of the sum of $24,343.75, with interest thereon at the rate of seven per cent per annum from March 24, 1913, at any time within sixty days from the date of the judgment herein together with plaintiff's costs, said plaintiff shall execute to said United States Land Company a good and sufficient deed conveying to said company an undivided three-fourths interest in and to the lands described in said original contract, and shall deliver possession of said three-fourths interest in said lands to said company.''

"In case of the failure of plaintiff, T. W. Potter, to make or join in the making of one of the deeds hereinbefore mentioned, a commissioner shall be appointed by this court to make such conveyance.''

"In case of the failure of said defendant, United States Land Company, to make the payments within the time hereinbefore provided, then said judgment foreclosing all the right, title, and interest of Henry C. Spaulding and the United States Land Company, a corporation, and of each of them, in and to said contracts and in and to the said lands shall be and become absolute.''

Judgment was accordingly entered.

Briefly stated, plaintiff seeks money damages and a strict foreclosure of the contracts with the right to retain the eleven thousand dollars paid by Pigg and Spaulding on account of the purchase price of the land. Defendant United States Land Company seeks to have a lien declared upon all the land to the extent of eleven thousand dollars and interest from January 15, 1912, and that said lien be foreclosed; that said agreements be specifically performed and plaintiff adjudged to convey to defendant, United States Land Company, or such defendants as the court may find entitled thereto, said 220 acres of land. As an alternative proposition, defendant offers to receive said sum of eleven thousand dollars, or such sum as the court may adjudge to be owing to it, "'or to take and receive from plaintiff said 220 acres of land above men-

tioned, or such portion thereof as the court may adjudge should be conveyed to it by plaintiff herein,'' or finally, ''to pay to plaintiff herein the sum of money agreed by defendants W. R. Pigg and Henry C. Spaulding to be paid to plaintiff herein under said agreements of date December 8, 1911, and January 15, 1912, on the terms and conditions set out in said agreements if this court should adjudge that the same be paid upon conveyance to defendant, United States Land Company, a corporation, by plaintiff herein of a good and merchantable title to the lands described in said agreement of date December 8, 1911''; and in this regard, defendant asks the court to grant ''such length of time as to this court may appear meet and proper in the premises within which to pay to plaintiff herein the sums of money agreed by said agreement to be paid to plaintiff herein, and to perform each and all of the terms and conditions therein set forth to be done by defendants W. R. Pigg and Henry C. Spaulding, and that thereupon plaintiff herein shall make, execute, and deliver to defendant, United States Land Company, a corporation, or to such of the defendants as may be found by this court to be entitled thereto, a conveyance of a good and merchantable title to the whole of the lands described in said agreement of December 8, 1911,'' and for such other relief, etc.

The court, in its findings and judgment, has apparently adopted defendant's alternative proposition in so far as to decree that upon payment by defendant, United States Land Company, to plaintiff of $36,125, with interest at seven per cent from March 24, 1913, together with plaintiff's costs of action, plaintiff and his wife shall convey to defendant United States Land Company, by sufficient deed, the lands in said original contract described, ''subject to the easements mentioned in the findings herein, and deliver to said defendant, United States Land Company, the possession of said lands.'' Then follows the provision of the decree which is claimed to be wholly outside of any agreements entered into by the parties and outside any issues in the case, namely, that in the event Mrs. Potter fails or refuses to join in the execution of said deed, ''then upon the payment by the United States Land Company to said plaintiff of the sum of $24,343.75, with interest thereon at the rate of ten per cent per annum from March 24, 1913, at any time within sixty days from the date of this judgment, together with the plain-

tiff's costs, said plaintiff shall execute to said United States Land Company a good and sufficient deed convcying to said company an undivided three-fourths interest in the land described in said original contract, and shall deliver possession of said three-fourths interest in said land to said United States Land Company." It is then decreed that in case defendant United States Land Company fails to make such payments within the time decreed, "then the judgment foreclosing all the right, title, and interest of said defendant Henry C. Spaulding and United States Land Company, and of each of them, in and to the said interests and in and to said land shall be and become absolute. Should plaintiff fail to make or join in making of one of said deeds, a commissioner is provided for to make the same."

We have examined the evidence with some care and arè satisfied that it is sufficient to support the findings of fact. It is not so much the facts themselves that are questioned by appellant as the force given them by the court. For example, the court found that plaintiff cleared the title of all defects notwithstanding there were certain easements which concededly were not removed. As to these the evidence was that the defendants were familiar with the land; had gone all over it before the contracts were entered into and, as the court found, "saw the said pipe-line and telephone line of the Standard Oil Company and the pole and electric line of the San Joaquin Light & Power Company extending across said lands on the respective rights of way of said companies" and the other visible evidence of these existing easements and, as the court further found, "they made no objections thereto, or to the title to said lands on account thereof." Mr. Power, of Power & McFadzean, who were the attorneys agreed upon by the parties to cure the title, testified that it was understood by all the parties to the transaction that these visible easements were not to be considered as encumbrances. Appellant, among other of its objections, claims that these defects are incurable. That is true, but it was equally true when defendants were bargaining for the property, and this fact tends to show that they were not to be considered. It is chiefly on account of these easements that appellant now urges that plaintiff was in default.

The evidence was that said attorneys notified all the parties March 15, 1913, that the title was then clear and merchantable, and it was with this knowledge in mind when plaintiff

called upon Spaulding as president and manager of defendant company, that the latter made no objection to the title but asked for more time in which to raise the money necessary to meet the payments then due. It was about two months thereafter that plaintiff served written notice on defendants mentioned in the findings.

As to the objection that the deed placed in escrow by plaintiff was a quitclaim deed in form, we do not think it now necessary to express an opinion. It was known to be in escrow with the other documents in the Visalia Bank and its form was never objected to. The court found that it was a grant deed. However, in its findings of fact and conclusions of law, the court seems to have disregarded this deed. It was withdrawn from the bank by plaintiff, with other documents, about May 14, 1913. The court, in its conclusions of law, directed that on payment by defendants, plaintiff and wife execute a conveyance of a good and sufficient title except as to said easements. The court found, and we think the evidence supports the finding, that plaintiff was at all times ready and willing to perform on his part the covenants he had agreed to perform. There was much delay in perfecting the title, but the court found upon the testimony of said attorneys that owing to the complicated condition of the title the work of clearing all defects was performed within a reasonable time. An examination of the record convinces us that this finding is amply supported. Besides, defendants had no cause for complaint on this account. Their money obligations were not drawing interest and they were enjoying the rents and profits of the property. The transaction found itself enmeshed in many intricacies and many conflicting phases, as is plainly perceivable from the pleadings and the findings. The court, sitting as chancellor, manifestly endeavored to adjust the equities upon sound principles, and on the whole case we think the court had the right conception of the merits of the contending claims.

We are however, unable to find support for the conclusion of law which was carried into the judgment in the same language and as to which the judgment directs defendant Land Company to pay what we assume is intended to represent three-fourths of the contract price, and to take in return a three-fourths interest in the property, thus leaving a one-fourth interest outstanding in Mrs. Potter, should she refuse

to sign the deed with plaintiff. Mrs. Potter was not a party to the action; she is under no obligation to convey her one-fourth interest. Plaintiff's contract was to convey title to all the property, not a three-fourths interest therein. To compel defendant Land Company to accept a deed for less than plaintiff agreed to convey is to compel the performance of a contract which neither it nor its assignors ever entered into. We can find nothing in the record to sustain this part of the judgment. (*Jackson* v. *Torrence*, 83 Cal. 521, [23 Pac. 695]; *Olson* v. *Lovell*, 91 Cal. 506, [27 Pac. 765].) This portion of the judgment must be reversed. The court properly adjudged that upon the payment by defendant Land Company of the several sums specified, plaintiff and his wife should execute to said defendant a good and sufficient deed to all the lands described in said original contract. And the court provides for plaintiff's refusal by directing the appointment of a commissioner "to make such conveyance," who, of course, could not convey more than plaintiff's interest.

In its computation of the amount of money due under the contracts, the court credits defendant with the eleven thousand dollars paid by Pigg and Spaulding, but the court makes no finding as to what disposition should be made of this eleven thousand dollars should plaintiff fail to convey or cause to be conveyed the entire interest in the property; and this may happen should Mrs. Potter refuse to execute a deed to her one-fourth interest therein. It seems to us that the court should make a finding determining who is entitled to this eleven thousand dollars in the event of plaintiff's failure to convey or cause to be conveyed by a good and sufficient deed a title to the entire interest in said property.

That portion of the judgment specifically referred to above as not supported is reversed, with directions to the court to make findings with reference to said eleven thousand dollars payment as above suggested, the matter to be heard upon the evidence contained in the present record and such further evidence as the parties to the action may desire to submit.

It is further ordered that each party pay his own costs on this appeal.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 26, 1918.